**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-41389

_____


MILTON EVANS,

                          Plaintiff-Appellant,

VERSUS

WILLIAM S. BALL and DIANE STEADMAN,

                          Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

March 12, 1999

Before DAVIS, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Milton Evans sued William Ball and Diane Steadman, alleging common law malicious prosecution and constitutional violations pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). The district court granted summary judgment in favor of Ball and Steadman. Finding no error, we affirm.


I.

Ball and Steadman, Special Agents with the United States

Forest Service, undertook an investigation of Evans, a Forest Service employee, focusing on whether Evans was falsifying public comments about Forest Service projects and activities.[1] Based on information Ball and Steadman gathered, Evans was indicted on eight counts of knowingly making and using a false document, a violation of 18 U.S.C. § 1001.[2]

Subject to a summons, Evans appeared in court to answer these charges. He was released on his own recognizance with instructions to report once a month to pretrial services. The indictment was subsequently dismissed without prejudice on the government's motion. The government claims it dismissed the indictment in exchange for Evans's agreement to retire from the Forest Service; Evans contends there was no such agreement.

Evans then sued Ball and Steadman, asserting a *Bivens* claim on two grounds.[3] First, he alleged the agents violated his Fourth

---

[1] As part of his job, Evans would solicit citizens' comments about Forest Service programs, write them down, and then either have the person making the comment sign the written version or obtain that person's permission to have Evans write the person's name on the sheet. Ball and Steadman suspected that Evans was falsifying these comment sheets and using individuals' names without their permission in an attempt to increase the number of favorable comments.

[2] The statute provides that

[w]hoever, in any matter within the jurisdiction of any department of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

[3] Under *Bivens*, a victim who has suffered a constitutional violation by a

(continued...)

Amendment right "to be free from a prosecution that is not based on probable cause." Ball and Steadman, Evans averred, deliberately provided false information to, and withheld exculpatory evidence from, federal prosecutors, violating this Fourth Amendment right. Second, Evans argued that being summoned to appear in court to answer these false charges, and having pre-trial restrictions placed on him, violated his Fourth Amendment right "to be free from unreasonable restraint and seizure that is not based on probable cause." Evans also asserted a supplemental state law claim for malicious prosecution.

On the state law malicious prosecution claim, Ball and Steadman argued that the summary judgment evidence could not establish that the prosecution had terminated in Evans's favorSSa prerequisite to liability for malicious prosecution. Ball and Steadman contended that the government had dropped the claims against Evans in exchange for a promise to retire from the Forest Service. This "deal," defendants argued, did not constitute termination in Evans's favor.

The district court agreed that Evans had entered an "informal agreement" with prosecutors under which he would retire in exchange for dropping the charges. Because this resolution did not indicate that Evans was not guilty of the charges, the court determined that

---

[3](...continued)
federal actor may recover damages in federal court. *See Bivens*, 403 U.S. at 395-97; *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998).

his prosecution had not terminated in his favor and that he thus could not establish malicious prosecution.

The court also granted summary judgment on Evans's *Bivens* claim. Determining that Evans had not alleged a violation of a clearly established constitutional right, the court concluded that Evans had failed to overcome the defendants' assertion of qualified immunity.

## II.

We review a summary judgment *de novo*, applying the same standard as did the district court. *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). Summary judgment is proper when the pleadings and summary judgment evidence present no genuine issue of material fact and indicate that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputed facts preclude summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment was appropriate, courts must view the inferences to be reasonably drawn from the underlying facts in the record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We may neither weigh the evidence nor make credibility

4

determinations.  *Anderson*, 477 U.S. at 248.

                                III.

Summary judgment was proper on the state law malicious prosecution claim.  Termination of the prosecution in the accused's favor is an essential element,[4] and the summary judgment evidence, which unequivocally indicates that Evans agreed to do something in exchange for the government's dropping the charges, does not support a finding of favorable termination.

Evans asserts that the court erred in deciding that there was insufficient record support for a finding that the prosecution terminated in his favor, because there is evidence that his retirement from the Forest Service was not part of the bargain he struck.  Evans insists that he did not agree to retire in exchange for dropping the charges, but that he merely agreed not to advance a defense under the Speedy Trial Act should the government seek to reindict him.

The summary judgment evidence Evans points to is his own affidavit and that of his attorney, Claude Welch.  Evans's affidavit states, "I was not about to resign as a part of an agreement to drop criminal charges . . . .  I agreed only to waive

---

[4] Under Texas law, malicious prosecution includes seven elements: (1) prosecution against the plaintiff; (2) causation by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.  *Hart v. O'Brien*, 127 F.3d 424, 451 (5th Cir. 1997), *cert. denied*, 119 S. Ct. 868 (1999).

any Speedy Trial rights I had if the government reindicted me." Welch's affidavit reflects that there was "an understanding" that Evans would retire, but "there was no agreement," and that "[t]he only agreement that Mr. Evans made was that he would not raise the Speedy Trial Act if the cases were dismissed." Evans contends that because the agreement did not involve even a tacit admission of guilt, the prosecution did, in fact, terminate in his favor.

We disagree. This court has set a high standard for what constitutes termination in the accused's favor. In *Taylor v. Gregg*, 36 F.3d 453, 455-56 (5th Cir. 1994), we held that a "pre-trial diversion"SSan alternative to criminal prosecution that diverts certain defendants from traditional criminal justice processing into a program of supervisionSSis not termination in the defendant's favor, even if all criminal charges are dismissed. In so holding, we noted that "[t]he Second Circuit stated that proceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty." *Id.* at 456 (*citing Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)). We then declared that "[w]e agree with the Second Circuit and adopt its holding and reasoning." *Id.*

The rule in this circuit, then, is that proceedings terminate in favor of the accused only when they affirmatively indicate that he is not guilty. While Evans advocates the position that favorable termination results when the disposition fails to

6

indicate that the accused is guilty, the reasoning of *Taylor* forecloses that position; the disposition must affirmatively indicate a lack of guilt.

Under such a standard, Evans cannot demonstrate that the criminal prosecution terminated in his favor. While he insists that the agreement was not for him to retire, but simply for him to waive his Speedy Trial Act arguments should the government reindict him, he has admitted that he entered an agreement with prosecutors under which they would dismiss the charges in exchange for *something*. Regardless of which version of the agreement is correct, the disposition of the case does not affirmatively indicate that Evans was not guilty.

Moreover, the evidence compels the conclusion that the agreement was for Evans to retire in exchange for dropping the charges. Evans's attorney wrote the Acting Forest Supervisor that the agreement was

> [t]hat if the United States dismissed the indictment against Milton Evans, that Milton Evans would *retire* from the U.S. Forest Service no later than 90 days from the date of his reinstatement to active duty with the Forest Service *AND* if Milton Evans did not so retire that the United States would have the option of reindicting Milton Evans. In the event Milton Evans was reindicted by the United States that he would not plead, as a defense to the indictment, any defenses normally afforded a defendant pursuant to the "*Speed [sic] Trial Act.*"

(Emphasis in original.) Welch then wrote, "Yes, basically it was understood that Milton Evans would retire." These statements are "smoking guns" that indicate that Evans agreed to retire in

7

exchange for having charges dropped.  A reasonable jury could not find otherwise.

IV.

The district court correctly concluded that Evans's allegations in support of his *Bivens* claim fail to overcome the defense of qualified immunity.  Summary judgment was therefore proper.

A.

Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional right of which a reasonable person would have known.  *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998).  The Supreme Court has clarified how courts should address a qualified immunity assertion, requiring a two-pronged test.  *See Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991).

Once a defendant pleads qualified immunity, the district court first must determine whether, under current law, he has alleged a constitutional violation at all.  *Id.*  The second prong requires courts to make two separate inquiries: whether the allegedly violated right was "clearly established" at the time of the incident; and, if so, whether the defendant's conduct was

8

objectively unreasonable in light of the clearly established law. *Id.; Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). We may not pretermit the first prong but must decide whether Evans has alleged *any* constitutional violation before we may move to the inquiries under the second prong. *See, e.g., Quives v. Campbell*, 934 F.2d 668, 670 (5th Cir. 1991).

## B.

Evans purports to have alleged two violations of his clearly established constitutional rights. First, he claims the defendants' actions violated his right to be free from unreasonable seizures. He claims that the defendants' providing misleading information led to an unreasonable seizure that began when he received a summons pursuant to FED. R. CRIM. P. 9 to appear and answer to criminal charges. The summons, he avers, was accompanied by other restrictions on his liberty. In particular, he alleges that he was fingerprinted, photographed, forced to sign a personal recognizance bond, and required to report regularly to pretrial services, to obtain permission before leaving the state, and to provide federal officers with financial and identifying information. Taken together, Evans argues, the summons and these liberty restrictions constituted a seizure that, because it was based on false claims by Ball and Steadman, was unreasonable.

The district court held that an unreasonable seizure could not

be grounds for abrogating Ball's and Steadman's qualified immunity because Evans "failed to allege or show a seizure within the meaning of the Fourth Amendment, or at a minimum, that the 'seizure' alleged [violated] a clearly established Constitutional right." We disagree that Evans failed to allege a Fourth Amendment seizure, but we agree that, at the time of his seizure, the law was not clearly established that the restrictions placed on him constituted a seizure under the Fourth Amendment. Hence, the restrictions were not a *clearly established* constitutional violation, and the allegation of seizure cannot abrogate qualified immunity.

## 1.

A summons, coupled with the additional liberty restrictions that were imposed on Evans, may constitute a seizure under the Fourth Amendment. In *Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983), we expressly declined to decide whether a mere summons backed by a threat of arrest could ever constitute a seizure. The summons in the case at hand, however, was accompanied by liberty restrictions so significant as to render Evans seized. In so concluding, we are guided by the Second and Third Circuits, which recently have held that accused individuals are seized when the conditions of their pretrial release include restrictions such as those imposed on Evans, particularly restrictions on the right to

10

interstate travel.  *See Gallo v. City of Philadelphia*, 161 F.3d 217, 222-23 (3d Cir. 1998); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir.), *cert denied*, 118 S. Ct. 1051 (1998).  We are also informed by the intimation in *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), that the right to interstate travel is addressable under the Fourth Amendment.[5]

We conclude, in light of these authorities, that Evans's summons to appear in court, coupled with the requirements that he obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information, diminished his liberty enough to render him seized under the Fourth Amendment.  Because he has asserted that his seizure was based on false information provided by Ball and Steadman, he has alleged a constitutional violationSSan unreasonable seizure, so the first prong of *Siegert* is satisfied.

2.

_____

[5] In holding that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest," *Gerstein*, 420 U.S. at 114, the Court stated, "Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint on liberty.  See, e.g., 18 U.S.C. §§ 3146(a)(2) . . . ." *Id.*  The code provision the Court cited permits pretrial release with "restrictions on the travel . . . of the person during the period of release."  18 U.S.C. § 3146(a)(2) (1970), revised and recodified at 18 U.S.C. § 3142(c)(1)(B)(iv) (1994) (permitting "restrictions on . . . travel").  Hence, the *Gerstein* Court indicated that the liberties protected by the Fourth Amendment are not limited to physical detentions and include the accused's freedom to travel while on pretrial release.

Under the second prong of *Siegert*, we must decide whether it was clearly established, when Evans was seized, that the summons and liberty restrictions to which he was subject constituted a seizure.  We conclude that the law at the time of Evans's seizure was not clearly established to that effect.

This circuit has never considered the question whether a summons plus additional liberty restrictions can constitute a seizure, and we have expressly declined to answer the question whether a summons, standing alone, is a seizure.  *See Nesmith*, 715 F.2d at 196.  Although one Justice has opined on the subject,[6] the Supreme Court has left open the question whether a voluntary response to an arrest warrant, coupled with pre-trial travel restrictions, is a seizure.  *See Albright v. Oliver*, 510 U.S. 266, 275 (1994).

Moreover, other courts[7] have found that a summons does not implicate the prohibition of the Fourth Amendment against unreasonable seizures,[8] and *Murphy and Gallo*SSthe cases from other circuits holding that a summons accompanied by interstate travel

---

[6] *See Albright v. Oliver*, 510 U.S. 266, 279 (1994) (Ginsburg, J., concurring) (suggesting that a defendant released prior to trial on the condition that he later appear before the court is still seized within the meaning of the Fourth Amendment).

[7] We do not address whether the decisions of other circuits have a bearing on whether the law is "clearly established" in this circuit.

[8] *See Prather v. City of Louisville*, 85 F.3d 629 (6th Cir. 1996) (unpublished) (table), 1996 U.S. App. LEXIS 14471 (6th Cir. May 10, 1996) (No. 94-5634) (unpublished); *De Hardit v. United States*, 224 F.2d 673 (4th Cir. 1955); *Ducas v. Martin*, 941 F. Supp. 1281, 1293 (D. Mass. 1996).

12

restrictions may constitute a seizure§§had not been decided when Evans's liberty was limited by the summons and restrictions. Finally, in hinting that some types of interstate travel restrictions could implicate Fourth Amendment liberties§§a suggestion that lends support to our conclusion that Evans was seized§§the *Gerstein* Court did not hold that simply requiring an accused to obtain permission to leave the state constituted a seizure, so that Court did not clearly establish that the restrictions placed on Evans amounted to his being seized. Taken together, these observations indicate that, at the time Evans's liberty was restricted, it was not clearly established that the restrictions constituted a seizure under the Fourth Amendment.

C.

Evans's other purported allegation of a clearly established constitutional violation§§his claim that Ball and Steadman violated his "right to be free from a prosecution not based on probable cause"§§also fails to abrogate qualified immunity. A plaintiff attempting to state a claim under 42 U.S.C. § 1983 for prosecution unsupported by probable cause must establish, as with a common law malicious prosecution claim, that the prosecution terminated in his favor. *See Brummett v. Camble*, 946 F.2d 1178, 1183 (5th Cir.

13

1991).[9]  Because a *Bivens* action parallels a § 1983 action,[10] we

---

[9] We construe Evans's claim of a "prosecution unsupported by probable cause" as a claim of malicious prosecution, because a prosecution that is unsupported by probable cause but does not rise to the level of malicious prosecution is not a clearly established constitutional violation.  As a pure matter of logic, there is a difference between the right to be free from malicious prosecution and the right to be free from a prosecution unsupported by probable cause.  Malicious prosecution includes seven elements: (1) prosecution; (2) causation by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.  *Hart*, 127 F.3d at 451.  Prosecution in the absence of probable cause requires only elements one, two, and five.  Of course, if there is no probable cause, then elements three, four, six, and seven likely will be present as well.  But it is possible to conceive of a "prosecution unsupported by probable cause" that would not constitute a "malicious  prosecution."

There is, however, no clearly established constitutional right to be free from a prosecution that is unsupported by probable cause but that does not rise to the level of malicious prosecution.  First of all, the text of the Fourth Amendment does not refer to any right to be free from prosecutions not supported by probable cause.  It states that "no Warrants shall issue, but upon probable cause," but there is a difference between a warrant unsupported by probable cause and a prosecution in the absence of probable cause.  Indeed, there was no warrant (or arrest) in this case; Evans was summoned to court.  Hence, the text of the Fourth Amendment does not support the proposition that a prosecution not based on probable cause is a constitutional violation.

That proposition also lacks support in our caselaw.  We have held that malicious prosecution may be a constitutional violation, but only if all of its common law elements are established, including termination in favor of the accused.  *See Brummett*, 946 F.2d at 1183.  In *Wheeler v. Cosden Oil & Chem. Co.*, 734 F.2d 254 (5th Cir. 1984), we did state that "there is a federal right to be free from bad faith prosecutions," *id*. at 258 (*quoting Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1973)), and we defined bad faith as "without probable cause." *Id.* A close reading of that case, however, indicates that we meant only to be recognizing a federal right to be free from malicious prosecution.

The issue before the *Wheeler* court was whether malicious prosecution could form the grounds for a § 1983 action, and while the language quoted above suggests that a prosecution unsupported by probable cause (but not involving all the elements of malicious prosecution) would violate the Constitution, we did not so hold.  In fact, we noted that other circuits agreeing with us that there is a § 1983 action based on malicious prosecution "have implicitly recognized such a cause of action in decisions holding that termination of the allegedly wrongful state proceedings in favor of the federal plaintiff is as essential to such a claim under § 1983 as it would be at common law."  *Id*. at 260 n.14.  *Wheeler*, then, should not be read as recognizing a constitutional right to be free from prosecutions that are unsupported by probable cause but that do not rise to the level of malicious prosecution.  In addition, in *Brummett* we questioned whether *Wheeler*'s reasoning on "the implied constitutional right to have charges brought only upon probable cause . . . would survive the Supreme Court's recent attempts to predicate constitutional rights on a more textual footing."  *Brummett*,

(continued...)

14

reason that a plaintiff attempting to base a *Bivens* claim on a prosecution unsupported by probable cause must establish all the elements of malicious prosecution, including termination of the prosecution in his favor.[11]

V.

Evans thus does not allege a clearly established constitutional violation, because the prosecution did not terminate in his favor. Because he has alleged no violation of a clearly established constitutional right, he is unable to overcome the defense of qualified immunity, and the district court correctly

---

[9](...continued)
946 F.2d at 1181 (*citing Wilson v. Seiter*, 501 U.S. 298 (1991)).

Finally, the Supreme Court has noted that "the most expansive approach" any circuit has taken in finding a constitutional violation in a prosecution unsupported by probable cause still maintains that the elements of the constitutional cause of action "are the same as the common-law tort of malicious prosecution." *Albright*, 510 U.S. at 271 n.4. Taken together, these observations demonstrate that Evans did not have a clearly established constitutional right "to be free from a prosecution that is not based upon probable cause." He has a right to be free from malicious prosecution, but to demonstrate a violation of that right, he would have to demonstrate all the elements of malicious prosecution, including termination in his favor.

[10] A *Bivens* action is analogous to an action under § 1983SSthe only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials. *See Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993) ("Bivens is the federal counterpart of § 1983 [and] . . . . extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983."). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[I]t would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.'") (quoting *Butz v. Economou*, 438 U.S. 478, 504 (1978)).

[11] *See Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998) (holding that favorable termination is necessary element of *Bivens* action, as well as § 1983 action, that is premised on prosecution unsupported by probable cause).

15

granted summary judgment.

AFFIRMED.