William BRENDLE, Plaintiff,

v.

CITY OF HOUSTON, MISSISSIPPI, et al., Defendants.

No. 1:99CV20–D–B.

United States District Court, N.D. Mississippi, Eastern Division.

Jan. 5, 2001.

James A. Moore, Jimmy D. Shelton & Associates, Tupelo, MS, Luther C. Fisher, IV, Oxford, MS, for plaintiff.

Patricia Brendle, Tupelo, MS, pro se.

Mark D. Fijman, Phelps Dunbar, Jackson, MS, for defendants.

## OPINION

DAVIDSON, Chief Judge.

Before the court is the Municipal Defendants'[1] Motion to Dismiss on the Basis of

**1.** Municipal Defendants are the City of Houston, Mississippi, W.D. Smith, III, individually and in his official capacity as Mayor of the City of Houston, John Fred Lancaster, Shenia Kay Jones, Leon Martin, Brenda Crawford, Joe A. Stone, individually and in their official capacities as Aldermen for the city of Houston, Mississippi, Adolph Davis, individually and in his official capacity as Chief of Police of the City of Houston, Mississippi, Trancis

Statutory Limitations, Qualified Immunity, or Alternatively, for Summary Judgment. Upon due consideration of the motion, the court finds that the motion should be denied.

Factual Background The Plaintiff, William Brendle (Brendle), operated an auto repair business in the city of Houston, Mississippi. Brendle repossessed a vehicle from the grounds of an auto repair shop operated by the Defendant, Herbert Miller (Miller). On or about January 18, 1996, Miller, who claimed that he was owed money for work he had done on the vehicle, arrived at Brendle's shop in a Houston Patrol car driven by Defendant, Trancis Ford (Ford), an officer with the Houston Police Department. In Ford's presence, Miller demanded that Brendle pay him money owed for work done on the repossessed vehicle. After Brendle refused to pay Miller any money, Ford and Miller undertook to leave in the police vehicle. While they were leaving, Brendle asked Ford why he was transporting a civilian in a police unit, and Ford replied that he did not have to tell Brendle "a damn thing." See Amended Complaint at ¶ XVIII. Brendle then replied that "by damn, somebody will." Id. at ¶ XIX.[2]

Ford then told Brendle that "you're going with me," but did not tell Brendle that he was under arrest. Id. at ¶ XX–XXI. Brendle said that he was not going with Ford and that he would call the Police Chief. Id. at ¶¶ XXII–XXIII. Ford grabbed Brendle from behind, slung him to the ground, rolled him over and then handcuffed him. Brendle sat on the ground and did not cooperate with Ford,

but did not resist him either. When Ford began to drag Brendle, he got up and walked to the vehicle. Id. at ¶¶ XXIV–XXVII. During the incident, Ford used profane language and threatened Brendle's wife, Patricia. Id. at ¶ XXVII. At the police station Defendant, Chief of Police, Adolph Davis (Davis), asked Ford what he was charging Brendle with and Ford replied that he didn't know, to which Davis commented, "there must be something we can charge him with." Id. at ¶¶ XXX–XXXI. Brendle was never informed of what he allegedly did wrong. Later that day, tickets for public profanity and resisting arrest were delivered to his attorney. Id. at ¶ XXXIV. Brendle was convicted both in Houston Municipal Court and Chickasaw County Circuit Court. The convictions were overturned on appeal in *Brendle v. City of Houston*, 759 So.2d 1274, 1276 (Miss.Ct.App.2000).

Brendle's Amended Complaint alleges that Mayor Smith, Alderman Lancaster, Alderman Jones, Alderman Martin, Alderman Crawford, and Alderman Stone failed to discipline, supervise and/or train individual police officers; that Chief Davis conspired in prosecuting false charges and failed to discipline, supervise, and/or train individual officers; and that police officers Ford, White, and Todd interfered with Brendle's private car repair business. Additionally, Ford allegedly followed Brendle's sixteen year old daughter in an attempt to harass her; and wrongfully arrested Brendle while using excessive force.

The individual Municipal Defendants claim they are entitled to qualified immu-

---

Ford, Jeff White, Cameron Todd, individually and in their official capacities as police officers of the City of Houston, Mississippi.

2. In ruling on a motion for summary judgment under Rule 56, the court must take as true the well-pleaded allegations in the com-

plaint and construe them in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). The courts factual summary is so drafted.

nity as to Brendle's claims of wrongful arrest, excessive force, and First Amendment violations. As these three claims only apply to Defendants Ford and Davis, only they will be considered in this motion to dismiss on the grounds of qualified immunity.

In compliance with an order issued by Magistrate Judge, Eugene M. Bogen, on the 23rd of August, 2000,[3] this court will not consider any issues other than the qualified immunity defense and municipal policy, and therefore declines to rule on the statute of limitations issue.

Summary Judgment Standard

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the *Federal Rules of Civil Procedure,* the burden then shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. That burden is not discharged by "mere allegations or denials." Fed.R.Civ.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Federal Claims and Qualified Immunity

The Municipal Defendants move to dismiss the § 1983 claims brought against them in their individual capacities on the basis of qualified immunity. State actors, including law enforcement officers, are entitled to assert the defense of qualified immunity in a § 1983 suit for discretionary acts occurring in the course of their official duties. *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396, 403 (1982); *Gagne v. City of Galveston,* 805 F.2d 558, 559 (5th Cir. 1986); *Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir.1986). Qualified immunity shields state actors from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *White v. Walker,* 950 F.2d 972, 975 (5th Cir.1991); *Morales v. Haynes,* 890 F.2d 708, 710 (5th Cir.1989).

---

**3.** See Case Management Plan and Scheduling Order dated August 23, 2000, ¶ 5(A) stating "[d]efendants shall on or before October 1, 2000, file their dispositive motions raising immunity defenses." See also Case Management Plan and Scheduling Order ¶ 6(B)(2)

"[d]iscovery is strictly limited to the immunity defenses raised by defendants, and limited to the policies of the City of Houston related to plaintiff's arrest and defendant police officers' knowledge and understanding of applicable law."

■ The qualified immunity determination is a two-step analysis. Once a defendant pleads qualified immunity, the district court first must determine whether, under current law, the Plaintiff has alleged a constitutional violation at all. The second prong requires courts to make two separate inquiries: whether the allegedly violated right was "clearly established" at the time of the incident; and, if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law. *Evans v. Ball,* 168 F.3d 856, 860 (5th Cir.1999) (citations omitted). See also *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (emphasizing that analytical structure of qualified immunity claim requires courts first to determine whether "plaintiff has asserted a violation of a constitutional right at all"). In considering whether the Plaintiff has alleged a violation of a constitutional right, the court must be mindful of the heightened pleading requirement that the Plaintiff is required to meet in order to overcome the defense of qualified immunity. See *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995); *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985). To avoid dismissal, the Plaintiff must allege specific facts which, if true, would defeat the qualified immunity defense. *Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991 (5th Cir.1995), cert. denied, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995).

*Wrongful arrest*

In analyzing a claim of qualified immunity, it is necessary to begin by determining the precise nature of the constitutional right Brendle is contending was violated. In the case at hand, Brendle is alleging that Ford violated his First Amendment right of free speech by arresting him in retaliation for questioning why he was transporting a civilian in a city vehicle and

for saying "damn." Brendle also alleges that Davis conspired in prosecuting those charges. Brendle's allegations set forth a viable constitutional claim. It has long been clear that "[f]reedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action." *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 570, 62 S.Ct. 766, 768, 86 L.Ed. 1031 (1942), *Lovell v. City of Griffin,* 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938).

The second step in the qualified immunity analysis is to determine whether the free speech right which was allegedly violated was clearly established at the time of the events in question. *Evans,* 168 F.3d at 860. Ford and Davis contend that they are entitled to qualified immunity because the arrest of Brendle did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d 396, 403. Ford and Davis maintain that they could not have known that their actions violated clearly established law because they were acting pursuant to a Mississippi law that had never been held to be unconstitutional.

■ Law enforcement officers are entitled to rely upon a state law which has not been held unconstitutional. In *Michigan v. DeFillippo,* 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979), the Supreme Court stated that, "[p]olice are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconsti-

tutional that any person of reasonable prudence would be bound to see its flaws." *Id.* at 38, 99 S.Ct. at 2632. When the Plaintiff in DeFillippo was arrested, however, there was no precedent that the ordinance was or was not constitutional. *De-Fillippo*, 443 U.S. at 37, 99 S.Ct. at 2632. Here, there is clear precedent hat the Mississippi statute was unconstitutional.

At the time of Brendle's arrest, the Mississippi Code provided:

Public profanity or drunkenness

If any person shall profanely swear or curse, or use vulgar and indecent language, or be drunk in any public place, in the presence of two (2) or more persons, he shall, on conviction thereof, be fined not more than one hundred dollars ($100.00) or be imprisoned in the county jail not more than thirty (30) days or both.

Miss.Code.Ann. § 97–29–47 (1994).

Mississippi case law held in *Orf v. State*, 147 Miss. 160, 164, 113 So. 202, 202 (1927), that the word "damn" was "profane." Id. The Mississippi Supreme Court said the statement, "Well, the 'd—'thing is done broke up," voiced at the doors of a church while Sunday school participants were being dismissed, constituted profanity. This past June, however, the Mississippi Court of Appeals limited the statute to "fighting words" or some "libelous words." *Brendle*, 759 So.2d at 1283.

However, when the Plaintiff in *DeFillippo*, was arrested, there was no controlling precedent that the ordinance was or was not constitutional. *DeFillippo*, 443 U.S. at 37, 99 S.Ct. at 2632. In the case had hand there is clear precedent that the Mississippi statute was unconstitutional.

In *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), the defendant was convicted under a California breach of the peace statute for walking through a courthouse corridor wearing a jacket bearing the words, "F---the draft." *Id.* at 16, 91 S.Ct. 1780. On appeal the United States Supreme Court held that states may not, consistent with the First and Fourteenth Amendments, make the "simple public display involved of the single four-letter expletive a criminal offense." *Id.* at 26, 91 S.Ct. 1780.

There is also clear precedent that the Supreme Court has limited profanity statutes, such as the one Brendle was charged under, to "fighting words." In *Chaplinsky*, the United States Supreme Court articulated that those words constituting fighting words were "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky*, 315 U.S. at 574, 62 S.Ct. 766.

Additionally, in *City of Houston v. Hill*, 482 U.S. 451, 454, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), the United States Supreme Court commented that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *Id.* at 461, 107 S.Ct. 2502. The court held, "Speech is often provocative and challenging ... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* at 461, 107 S.Ct. 2502. Further the court declared that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63, 107 S.Ct. 2502. The Supreme Court in *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), held that

a municipal statute which prohibited persons from wantonly cursing, reviling or using obscene or opprobrious language "toward or with reference to any member of the city police while in the actual performance of his duty," was facially overbroad and "punishe[d] only spoken words" and was not limited in scope to fighting words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 133, 94 S.Ct. 970 (quoting *Gooding v. Wilson,* 405 U.S. 518, 525, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972)).

Whether Ford and Davis actually knew of these decisions is irrelevant; the test for qualified immunity is an objective one: whether, in the light of the preexisting law, the unlawfulness of the officials actions was apparent. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The official is deemed to be aware of the law.

Furthermore, in light of Brendle's allegations that Ford used profanity towards Brendle and his wife prior to arresting Brendle, the court finds that Ford may have acted unreasonably in arresting Brendle.

For the forgoing reasons, this court finds that Defendants Ford and Davis are not entitled to qualified immunity on the issue of wrongful arrest.

*Excessive Force*

In determining the propriety of qualified immunity from excessive force claims, the court is faced with the unusual circumstance that the standard for stating a claim—the objective reasonableness of the force exerted—corresponds in large part with the inquiry governing qualified immunity—the objective reasonableness of the officer's conduct. *Heitschmidt v. City of Houston,* 161 F.3d 834, 839 (5th Cir. 1998). The test of reasonableness under the Fourth Amendment is not capable of

mechanical application and its proper application requires particular attention to the facts and circumstances of the individual case, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether he actively resisted arrest or attempted to evade arrest by flight. *Graham v. M.S. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). See *Holland v. City of Houston,* 41 F.Supp.2d 678, 691 (S.D.Tex.1999) (quoting *Graham,* 490 U.S. at 397, 109 S.Ct. 1865). ("The determination of whether a particular use of force was reasonable under the Fourth Amendment 'must be judged from the perspective of a reasonable officer on the scene, rather that with the 20/20 vision of hindsight' ").

Here, Brendle alleges that Ford grabbed him from behind, slung him to the ground, rolled him over and then handcuffed him. Additionally, Brendle alleges that Ford began dragging him to the police car when he refused to go voluntarily. In asserting these facts, Brendle has satisfied the first step of the qualified immunity analysis. That is, Dallas has alleged the violation of a clearly established Fourth Amendment right not to suffer excessive force. *Graham,* 490 U.S. at 394, 109 S.Ct. 1865.

The second step is to determine whether Ford's actions were objectively reasonable. This is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating the plaintiff's constitutionally protected rights "under the circumstances of the complained of action." *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034). Drawing all justifiable inferences in favor of Brendle, this court finds that these were the circumstances facing Ford during the complained of action:

Brendle, who had just refused to pay a bill, which another civilian commanded he pay, had demanded to know why Ford was transporting a civilian in a police car; Ford was verbally abusive to Brendle; Brendle was verbally abusive in return; Ford attempted to place Brendle in the police car; Brendle verbally refused and attempted to call the chief of police; Ford never told Brendle he was under arrest; at no point did Brendle resist arrest or physically challenge Ford.

The court determines that genuine issues of material fact exist regarding whether a reasonable officer, facing an individual like Brendle, who did not resist arrest or physically challenge the officers, would consider that Ford violated Brendle's constitutionally protected rights by grabbing him from behind, slinging him to the ground, rolling him over and then handcuffing him and dragging him to the police car. See *Owen v. Williamson,* No. 1:96cv259, 1998 WL 378350, at *1 (N.D.Miss. May 4, 1998)(plaintiff offered no resistance to arrest and obeyed officer's orders, but officer forced him to ground while kneeing and kicking him).

The court recognizes that officers are often forced to make split-second decisions in circumstances that are tense, uncertain, and rapidly evolving. Moreover, the court is aware that police officers routinely utilize handcuffs during an arrest or detention of a suspect. However, this court cannot say that a reasonable officer, facing an individual who was neither resisting arrest, nor physically confrontational, would have considered Ford's actions an objectively reasonable response to the situation at hand. For the reasons stated above, the court holds that Ford's motion to dismiss based on qualified immunity shall be denied as to Brendle's excessive force claim.

*First Amendment*

■ Brendle claims that Ford and Davis retaliated against him for exercising his First Amendment free speech right by arresting and ticketing him for saying "damn" and questioning why a city police officer was transporting a civilian to collect a private debt. See Amended Complaint ¶¶ XIV & XVII. Brendle alleges a violation of a clearly established constitutional right. See *Keith v. Schuh,* 1997 WL 457487, at *12–*13 (N.D.Miss. July 14, 1997) ("[T]he right of the plaintiff to be free from malicious retaliation by public officials such as the defendant for the exercise of First Amendment freedoms was 'clearly established' ... even if the official in question had available a legitimate alternative justification, e.g., probable cause, for taking the action."). Furthermore, for the reasons stated above, this court is of the opinion that Ford's and Davis' conduct was objectively unreasonable in light of clearly established law. As such, the court finds that qualified immunity does not bar Brendle's First Amendment claim.

Municipal Policy

■ The Defendant, City of Houston, alleges they are entitled to be dismissed due to Brendle's inability to establish a municipal policy which caused his constitutional violations. To hold a municipality accountable for a violation of constitutional rights, a plaintiff must establish: (1) that the municipal employee violated his clearly established constitutional rights with deliberate indifference; and (2) that this violation resulted from an official municipal policy or custom adopted and maintained with objective deliberate indifference. *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 528–29 (5th Cir.1999).

Brendle claims that due to the order entered by Magistrate Judge Eugene M. Bogen on August 23, 2000, limiting discov-

ery, that Defendant's Motion on the issue of municipal policy is untimely. See Case Management Plan and Scheduling Order dated August 23, 2000, ¶ 5(A) stating "[d]efendants shall on or before October 1, 2000, file their dispositive motions raising immunity defenses." Brendle asserts that he is entitled to reasonable opportunity for discovery before facing a dispositive motion on behalf of the City of Houston.

However, the Case Management plan and Scheduling Order allowed discovery on this issue. See Case Management Plan and Scheduling Order ¶ 6(B)(2) "[d]iscovery is strictly limited to the immunity defenses raised by defendants, and limited to the policies of the City of Houston related to plaintiff's arrest and defendant police officers' knowledge and understanding of applicable law."

 Notwithstanding, considering only the pleadings in this action, and taking the facts alleged in the Complaint as true, the Court finds that the Municipal Defendants have failed to show that they are entitled to judgment as a matter of law. Therefore, Municipal Defendant's motion for summary judgment on the issue of municipal policy is denied.

Conclusion

For the above and foregoing reasons, Municipal Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment is denied as to the claims of wrongful arrest, excessive force, and First Amendment violations for the Defendants, Ford and Davis. Additionally, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment based on lack of municipal policy is denied. In compliance with an order issued by U.S. Magistrate Judge Eugene M. Bogen, on August 23, 2000, this court did not consider any issue other than the qualified immunity and municipal policy defense, and therefore de-

clines to rule on the statute of limitations issue.

A separate order in accordance with this opinion shall issue this day.