352 F.3d 1188
 Theresa KARAM, Plaintiff-Appellant,
v.
CITY OF BURBANK, a municipality; Burbank Police Department; Miranda, Burbank Police Officer, # 7734; Sindle, Burbank Police Officer # 7942; Gordon Bowers, Burbank Police Captain; David Newsham, Chief of Police; Burbank City Attorney; Gina Oh; Eric Hovatter; Juli Scott; Stacy Murphy; Robert Ovrom, Defendants-Appellees.
Theresa Karam, Plaintiff-Appellant,
v.
City of Burbank, a municipality; Gordon Bowers, Burbank Police Captain; David Newsham, Chief of Police; Eric Hovatter; Juli Scott; Matt Miranda, Burbank Police Officer #7734; Stacy Murphy; Robert Ovrom; Shane Sindle, Burbank Police Officer # 7942, Defendants-Appellees, and
Burbank Police Department; Burbank City Attorney; Gina Oh, Defendants.
 No. 02-55954.
 No. 02-56220.
 United States Court of Appeals, Ninth Circuit.
 Argued June 3, 2003 and October 15, 2003.
 Submitted October 15, 2003* — Pasadena, California.
 Filed December 8, 2003.
 
 COPYRIGHT MATERIAL OMITTED Steven W. Kerekes, Beverly Hills, California, for the Appellant.
 Richard R. Terzian, Kristin A. Pelletier, Gregg M. Audet, Los Angeles, California, for the Appellees.
 Appeal from the United States District Court for the Central District of California; Ronald S.W. Lew, District Judge, Presiding, D.C. No. CV-01-00694-RSWL.
 Before: David R. THOMPSON, Stephen S. TROTT, and Richard C. TALLMAN, Circuit Judges.
 OPINION
 DAVID R. THOMPSON, Circuit Judge.
 
 
 1
 Theresa Karam regularly attended Burbank City Council meetings to express her opposition to the expansion of the Burbank airport. At one meeting, Burbank City Police Officer Shane Sindle told Karam, who had just entered the council chambers, that she would have to leave because the chambers were filled to capacity. Karam did not leave, and later addressed the Council. Officer Sindle submitted a police report of the incident, an investigation followed, and a misdemeanor complaint was eventually filed against Karam in state court. She was charged with delaying or obstructing a peace officer and trespassing. These charges were dismissed by the court. Karam then filed the present action against the City of Burbank, city officials, police officers and deputy city attorneys, alleging federal claims under 42 U.S.C. §§ 1983, 1985 and 1986, and state claims for malicious prosecution.
 
 
 2
 Karam voluntarily dismissed her claims under 42 U.S.C. §§ 1985 and 1986. The district court, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissed the § 1983 claims that were predicated on an alleged violation of the Fourth Amendment, as well as the state law malicious prosecution claims. Thereafter, the court granted summary judgment in favor of the defendants on the remaining § 1983 claims that were predicated on Karam's allegations that she had been prosecuted in retaliation for the exercise of her First Amendment rights. The court awarded attorney fees to the defendants pursuant to 42 U.S.C. § 1988. Karam appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 3
 In this appeal, Karam argues that the district court erred in dismissing her Fourth Amendment claims and granting summary judgment on her First Amendment retaliation claims. She does not challenge the district court's dismissal of her state law malicious prosecution claims. Although she alleged "malicious prosecution" in articulating her § 1983 claims, she relies upon specific alleged constitutional violations to support those claims.
 
 
 4
 We affirm the district court's Rule 12(b)(6) dismissal and its summary judgment in favor of the defendants. Karam's Fourth Amendment claims fail for lack of a "seizure," and her First Amendment retaliation claims fail for lack of causation.
 
 
 5
 Karam also appeals the district court's award of attorney fees. Although Karam's § 1983 claims did not survive beyond summary judgment, the claims were not frivolous. We reverse the award of attorney fees.
 
 I.
 
 6
 According to the facts alleged in Karam's first amended complaint, and the facts as to which there is no dispute, Karam entered the council chambers only after others had left. After she entered, Sindle told her she was trespassing, but he did not detain or arrest her. Two days later, with Officer Sindle's report in hand, detective Matthew Miranda telephoned Karam to further investigate the case. He also interviewed other witnesses, and submitted his report.
 
 
 7
 Deputy City Attorney Gina Oh reviewed the Sindle and Miranda reports and, apparently with some input from Deputy City Attorneys Eric Hovatter and Juli Scott, filed a misdemeanor complaint against Karam. The complaint charged Karam with delaying or obstructing a peace officer in the performance of his duties (California Penal Code § 148) and trespassing (California Penal Code § 602(n)). Detective Miranda telephoned Karam and told her she had to turn herself in or be arrested.
 
 
 8
 Karam appeared at the Burbank Municipal Court and signed an Own-Recognizance Release Agreement ("OR release"). The OR release required Karam to obtain permission from the court before leaving the state of California. It also required her to appear in court three weeks hence (presumably for arraignment or trial) and "at all other times and places ordered by the court." Karam filed a demurrer to the trespassing charge, and the court dismissed that charge prior to trial. At trial, it turned out that Miranda had falsely stated in his report that Karam admitted violating Officer Sindle's order; the court then dismissed the charge of delaying or obstructing a peace officer.
 
 
 9
 Karam then filed the present action against the City of Burbank, Mayor Stacy Murphy, City Manager Robert Ovrom, Officer Shane Sindle, Detective Matthew Miranda, Police Captain Gordon Bowers, Police Chief David Newsham, and City Attorneys, Gina Oh, Eric Hovatter and Juli Scott. Karam asserted claims under 42 U.S.C. § 1983 for what she contended was a violation of the Fourth Amendment caused by her alleged unlawful seizure. She also asserted a violation of the First Amendment caused by what she alleged was her retaliatory prosecution for the exercise of her free speech rights. In addition, she alleged claims under 42 U.S.C. §§ 1985 and 1986 (which she later voluntarily dismissed), and state law claims for malicious prosecution.
 
 
 10
 Pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Karam's § 1983 claims predicated on the alleged violation of the Fourth Amendment. The court concluded that Karam had never been arrested, and the conditions of her OR release did not amount to a Fourth Amendment seizure. Karam's state law malicious prosecution claims were dismissed because, inter alia, they were barred by California Government Code §§ 821.6 and 815.2.[1] The deputy city attorneys were dismissed from all of Karam's claims on the ground they were entitled to absolute immunity.
 
 
 11
 The defendants then moved for summary judgment on the § 1983 claims that were predicated upon what Karam alleged to have been her retaliatory prosecution in violation of the First Amendment. The court granted summary judgment in favor of the defendants, concluding there was no evidence that the individual defendants had any retaliatory motive as to Karam's prosecution, nor was her prosecution instigated pursuant to any custom, policy or practice attributable to the City or any policy-making person associated with it. The court awarded attorney fees to the defendants pursuant to 42 U.S.C. § 1988, determining that Karam's claims were "frivolous, unreasonable and groundless" and that she had pursued the litigation after this became clear.
 
 II.
 
 12
 We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), accepting as true all allegations of fact in a well-pleaded complaint and construing those facts in the light most favorable to the plaintiff. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir.2001). A dismissal under Rule 12(b)(6) is appropriate if the plaintiff "can prove no set of facts in support of [her] claim which would entitle [her] to relief." Id. (citation omitted).
 
 
 13
 We also review de novo a district court's summary judgment. See Oliver v. Keller, 289 F.3d 623, 626 (9th Cir.2002). We review for abuse of discretion a district court's award of attorney fees pursuant to 42 U.S.C. § 1988. See Elks Nat'l Found. v. Weber, 942 F.2d 1480, 1485 (9th Cir.1991).
 
 III.
 A. The Fourth Amendment Claim
 
 14
 We first consider whether the conditions of Karam's OR release — requiring that she obtain permission of the court before leaving the state and that she make court appearances — amounted to a seizure under the Fourth Amendment. We conclude they did not.
 
 
 15
 There is a division of circuit authority as to what may constitute a seizure under the Fourth Amendment in the context of pretrial release. Some courts have held that a seizure occurs only when there is an actual detention. See, e.g., Riley v. Dorton, 115 F.3d 1159, 1164 (4th Cir.1997) (rejecting concept of seizure occurring during pretrial release); Wilkins v. May, 872 F.2d 190, 194 (7th Cir.1989) (same). Other circuits have concluded that some pre-trial release restrictions may qualify as a seizure. See Evans v. Ball, 168 F.3d 856, 860-61 (5th Cir.1999) (holding a combination of pre-trial release restrictions, including restriction on interstate travel amount to a seizure); Gallo v. City of Philadelphia, 161 F.3d 217, 224-25 (3d Cir.1998) (same); Murphy v. Lynn, 118 F.3d 938, 942, 946 (2d Cir.1997) (same).
 
 
 16
 In this circuit we have held, not surprisingly, that a Fourth Amendment seizure occurs when a person is held in custody by arresting officers. See Fontana v. Haskin, 262 F.3d 871, 879 (9th Cir.2001). We have not addressed the question whether, absent an arrest, a seizure may occur by virtue of restrictions incident to pretrial release. However, even if a seizure under the Fourth Amendment conceivably could occur as a result of some combination of pretrial release restrictions, no such seizure occurred here.
 
 
 17
 Cases decided by our sister circuits in which they have concluded there was a seizure incident to a pre-trial release have involved conditions significantly more restrictive than those in the present case. See, e.g., Johnson v. City of Cincinnati, 310 F.3d 484, 493 (6th Cir.2002) ("[I]n each of the cases addressed by our sister circuits, the government not only curtailed the suspect's right to interstate travel, it also imposed additional restrictions ..., such as obligations to post bond, attend court hearings, and contact pretrial services.").
 
 
 18
 In the Fifth Circuit's Evans case, the plaintiff faced an eight-count felony indictment, and "was fingerprinted, photographed, forced to sign a personal recognizance bond, and required to report regularly to pretrial services, to obtain permission before leaving the state, and to provide federal officers with financial and identifying information." Evans, 168 F.3d at 860. The Fifth Circuit concluded that these conditions curtailed the plaintiff's liberty to such an extent that a Fourth Amendment seizure occurred. Id. at 861.[2]
 
 
 19
 The Third Circuit in Gallo determined that the plaintiff, who faced felony arson charges, was seized within the meaning of the Fourth Amendment when he was required to post a $10,000 bond, to attend all court hearings, to contact Pretrial Services on a weekly basis, and was prohibited from traveling outside of Pennsylvania and New Jersey. Gallo, 161 F.3d at 222. The court concluded that the plaintiff was seized because "[his] liberty was constrained in multiple ways for an extended period of time." Id. at 225.
 
 
 20
 The Second Circuit in Murphy concluded that a plaintiff, facing two felony charges, was seized when he was required to make eight court appearances while charges were pending against him, and was ordered not to leave the state of New York. See Murphy, 118 F.3d at 942. The court relied, in part, on Justice Ginsberg's concurrence in Albright v. Oliver, 510 U.S. 266, 278, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion), which noted that:
 
 
 21
 A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject ... to the condition that he seek formal permission from the court ... before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense.
 
 
 22
 Id. (emphasis added).
 
 
 23
 The present case does not involve circumstances comparable to those in Evans, Gallo, Murphy, or Albright. Karam was not charged with a felony. She was not required to report to anyone. All she had to do was show up for court appearances and obtain permission from the court if she wanted to leave the state. Obtaining such permission, while not burden-free, posed much less of a burden to her than it would to a person charged with a felony. And, with regard to the requirement to appear in court, that was no more burdensome than the promise to appear a motorist makes when issued a traffic citation. See Britton v. Maloney, 196 F.3d 24, 29-30 (1st Cir.1999). In sum, Karam's OR release restrictions were de minimus. No Fourth Amendment seizure occurred. Thus, the district court properly dismissed Karam's claims under 42 U.S.C. § 1983 grounded in her allegations of a Fourth Amendment violation.
 
 B. The First Amendment Claim
 
 24
 Karam alleged that the defendants instigated the charges against her in retaliation for her appearing at city council meetings and speaking out on issues of public concern. She failed, however, to present evidence establishing a nexus between the exercise of her First Amendment rights and her prosecution. In short, she failed to establish a genuine issue of material fact on the causation element of her claim. See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 285-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
 
 
 25
 Karam argues that the false statement in Detective Miranda's report shows that he retaliated against her for speaking out at the city council meeting. This evidence, however, does not contradict Miranda's testimony that he was unaware of Karam's statements or her history of criticizing the City and its officials. Karam's speculation as to Miranda's improper motive does not rise to the level of evidence sufficient to survive summary judgment. See Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751 (9th Cir.2001) (summary judgment appropriate when there is no evidence to establish that the defendant was aware of the protected speech). Karam contends she presented sufficient evidence to create at least a triable issue of fact on her allegation that, as a matter of official policy, practice or custom, the City issued, or caused to be issued, false police reports to secure the arrest of persons who criticized the city council. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (city may only be held liable under 42 U.S.C. § 1983 for constitutional violations caused by an official policy, practice or custom). She asserts that the city council had a practice of circulating among council members police reports pertaining to the council's critics, and that the council shared informal complaints about "gadflies" and "loonies" who made comments at council meetings. She argues this evidence suggests that her prosecution was pursuant to a governmental policy. However, the council member who testified as to these matters stated that, to his recollection, none of the four critics whose police reports he received had ever been prosecuted. There is no evidence that Karam's prosecution was due to any city policy, practice or custom or was instigated at the behest of any official policymaker. See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir.1992) (discussing the ways in which municipal liability may be established under Monell).
 
 
 26
 With regard to the deputy city prosecutors, Karam's complaint contained the following relevant allegation:
 
 
 27
 Plaintiff is informed, believes and based thereon alleges that City prosecutors, Eric Hovatter and Gina Oh participated in the investigation and fabrication of the false police reports prior to Plaintiff being officially charged with a violation of Penal Code section 148.
 
 
 28
 This allegation was sufficient to plead that Oh and Hovatter were functioning as investigating officers; thus, their dismissal by the district court pursuant to Rule 12(b)(6) on the basis of absolute immunity was improper. See Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir.2003) (prosecutor "performing investigatory or administrative functions" entitled to only qualified immunity). The error was rendered harmless, however, by the district court subsequently determining on summary judgment that there was no evidence that the prosecutors took any part in the investigation. To the contrary, the facts established indisputably that Oh and Hovatter did not step out of their prosecutorial roles, but rather exercised independent judgment in deciding to file the charges against Karam.[3] Because the prosecutors engaged only "in activities `intimately associated with the judicial phase of the criminal process,'" they were entitled to absolute immunity. Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).
 
 C. Attorney Fees
 
 29
 The district court awarded attorney fees to the defendants under 42 U.S.C. § 1988, reasoning that Karam's claims were frivolous, unreasonable and groundless, and that Karam continued to litigate after this became clear. The court set the amount of the fees at $44,044.
 
 
 30
 A prevailing defendant is entitled to attorney fees under 42 U.S.C. § 1988 only when the plaintiff's claims are "groundless, without foundation, frivolous, or unreasonable." McCarthy v. Mayo, 827 F.2d 1310, 1318 (9th Cir.1987). Karam's § 1983 claims do not satisfy this standard.[4]
 
 
 31
 Karam's Fourth Amendment claims raised the novel issue whether the pretrial restrictions imposed upon her as a result of her OR release rose to the level of a seizure. A case may be deemed frivolous only when the "result is obvious or the... arguments of error are wholly without merit." McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981) (citation omitted). A case "is less likely to be considered frivolous when there is `very little case law directly apposite.'" Int'l Bhd. of Teamsters v. Silver State Disposal Serv., Inc., 109 F.3d 1409, 1412 (9th Cir.1997) (citation omitted).
 
 
 32
 In view of the absence of Ninth Circuit authority on the OR release restrictions issue, we cannot say that our resolution of Karam's seizure argument was "obvious" or that Karam's Fourth Amendment claims were otherwise frivolous. See, e.g., Int'l Bhd. of Teamsters, 109 F.3d at 1412 (refusing to award fees and costs because of the lack of case law defining the precise contours of the exceptions to the doctrine of functus officio); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1489 (9th Cir.1995) (holding that the prevailing defendant was not entitled to attorney fees under § 1988 because there "was very little case law directly apposite"). Therefore, we conclude the district court erred in awarding attorney fees to the defendants on Karam's Fourth Amendment claim.
 
 
 33
 Whether the rejection of Karam's First Amendment retaliation claims supports an award of attorney fees is a closer question. In responding to the motion for summary judgment, Karam failed to present evidence establishing a genuine issue of material fact on the causation element of her claims. However, her inability to defeat summary judgment does not mean that her claims were groundless at the outset. See Mitchell v. Office of Los Angeles County, 805 F.2d 844, 847 (1986) ("There is a significant difference between the bringing of cases with no foundation in law or facts at the outset and the failure to present evidence sufficient to justify relief at trial.").
 
 
 34
 Based upon the circumstances known to Karam at the time she filed her complaint, and preceding the summary judgment proceedings, her First Amendment retaliation claims were not frivolous, unreasonable or groundless within the meaning of 42 U.S.C. § 1988. Karam frequently spoke at City Council meetings and had seen Officer Sindle on previous occasions. The day after the events giving rise to her prosecution, Karam attended a press conference during which she attempted to ask Mayor Murphy questions about the airport expansion. As Karam was asking the questions, the Mayor turned to talk to City Manager Bud Ovrom. Ron Vanderford, a private citizen who also attended the press conference, then observed a uniformed police officer rapidly approach Karam. Before the officer reached Karam, Ovrom said, "Just let her go. We'll get her later." Detective Miranda's report prepared thereafter contained the false statement that Karam admitted violating Officer Sindle's order.
 
 
 35
 These circumstances furnish some basis, albeit somewhat tenuous, for one to theorize that the Mayor and perhaps other city officials, tired of Karam speaking out against them, instigated the chain of events that led to her prosecution. During the summary judgment proceedings, however, evidence to support such a theory failed to materialize, and summary judgment was properly granted in favor of the defendants. But that did not render groundless, without foundation or frivolous, within the meaning of 42 U.S.C. § 1988, the First Amendment claims Karam had asserted.
 
 IV.
 
 36
 We AFFIRM the district court's dismissal of Karam's § 1983 claims predicated on the alleged Fourth Amendment violation, and the district court's summary judgment in favor of the defendants on the § 1983 claims predicated upon alleged retaliation in violation of the First Amendment. We REVERSE the district court's award of attorney fees in favor of the defendants. The appellant and the appellees shall bear their own costs for this appeal.
 
 
 37
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 Notes:
 
 
 *
 This opinion replaces the opinion issued on August 20, 2003, which was withdrawn by order of the panel dated October 6, 2003
 
 
 [1]
 Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6
 Section 815.2 provides:
 (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
 (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.
 Cal. Gov't Code § 815.2.
 
 
 [2]
 TheEvans court held that the federal agents were entitled to qualified immunity, however, because the law on what constituted a seizure in such circumstances had not been clearly established. See Evans, 168 F.3d at 861-62.
 
 
 [3]
 Karam does not challenge the district court's dismissal of city prosecutor Juli Scott
 
 
 [4]
 Section 1988 provides for the award of attorney fees in any action or proceeding to enforce specific federal statutes including § 1983. Karam's state law claims for malicious prosecution do not fall within the scope of § 1988