**James K. TERRELL, Plaintiff,**

v.

**The CITY OF EL PASO, et al., Defendants.**

**No. EP–03–CV–0364–KC.**

United States District Court, W.D. Texas, El Paso Division.

Feb. 26, 2007.

Sam Snoddy, Law Office, El Paso, TX, for Plaintiff.

Andres Eduardo Almanzan, Carl H. Green, Mounce, Green, Myers, Safi & Galatzan, P.C., Steven Lee Hughes, Duane A. Baker, Gary B. Weiser, Attorneys at Law, John Lomax Anderson, El Paso City Attorney's Office, Jennifer F. Callan, El Paso City Attorney's Office, Eduardo Miranda, Annabell Perez, El Paso, TX, Defendants.

## ORDER

CARDONE, District Judge.

On this day, the Court considered Plaintiff James K. Terrell's two Motions for Reconsideration, Defendant County of El Paso and Jaime Esparza's Motion for Summary Judgment and Defendant City of El Paso's Motion for Summary Judgment. For the reasons set forth herein, Terrell's motions are **DENIED** and the County's, Jaime Esparza's and the City's Motions are **GRANTED**.

## I. BACKGROUND

Plaintiff James K. Terrell ("Terrell") filed this action seeking damages against a number of individual police officers, Police Chief Carlos Leon, the City of El Paso ("City"), the County of El Paso ("County"), and Jaime Esparza ("Esparza"), for violating the First, Fourth, Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. He also seeks damages under Texas state law for battery, assault, malicious prosecution, false arrest and imprisonment, intentional infliction of emotional distress, and conspiracy. Terrell alleges that all defendants violated his right to be free from the use of excessive force and unreasonable seizure and his right to due process. He also complains of the deliberate indifference of the City, Esparza, and the County of El Paso to his civil rights in failing to instruct, control, and discipline the police officers.

On December 26, 2001, Terrell and a number other individuals were attending a Christmas party at the residence of Jacob Telles ("Telles") located at 5925 Via Norte, El Paso, Texas. Starting at approximately 1:48 a.m., various police officers arrived at or near Telles' residence in response to a dispatch indicating that there was a call from a neighbor complaining about a disturbance in the street. The parties dispute whether the police officers were dispatched to or actually arrived at the Telles' residence or instead arrived at a different but nearby address.

Upon arriving at Via Norte street, the police officers claim they first approached and searched an individual named Billy Porter. According to the police officers, during this search of Billy Porter, Telles, allegedly intoxicated, approached the police officers in a belligerent and argumentative manner and then in the course of this discussion gave the officers permission to enter his residence to check for narcotics and weapons. During the search of the Telles' residence, the police officers encountered Terrell. According to the police officers, Terrell was uncooperative and argumentative asking, for example, what authority the police officers had for entering and searching the home and refusing to place his hands on the wall so the police officers could conduct a pat-down search. Then, according to the police officers, Terrell pushed himself off the wall and in doing so pushed against one of the police officers. In response to this alleged resistance, the police officers forced Terrell to the ground and then arrested him.

After arresting Terrell, the police officers transported him to a local police station and then to the El Paso County Detention Facility where he was booked for resisting arrest and then released approximately four hours later on a bond. Shortly following Terrell's arrest, the circumstances of said arrest were sent to and reviewed by an assistant district attorney who was on duty pursuant to the District Attorney's Information Management System ("DIMS"). DIMS has been described as a 24-hour screening process whereby the El Paso District Attorney's office reviews the facts of an arrest with information from the arresting officers and then makes a real-time decision whether to accept or decline a case.

In the present matter, according to defendants, the DIMS assistant district attorney accepted the case against Terrell, recommended a bond of $1,000 pursuant to a bond schedule approved by the El Paso County Council of Judges, and ultimately released Terrell on bond just before noon without sending Terrell to a magistrate. According to defendants, Terrell's case was then referred to the Office of the County Attorney due to a conflict. There, an assistant county attorney recommended declining the case. To date, neither the County or District Attorney have commenced criminal proceedings against Terrell.

Terrell, along with other witnesses including for example Telles, provide a different account of certain portions of the incident. According to Terrell, there was no disturbance in the street and the police officers arrived at an address not provided in the dispatch. Terrell further explains that the police officers were rude and aggressive from the time of their arrival on the scene through the time he was taken to the police station. For example, Terrell alleges that during and following his arrest, the police officers taunted him with abusive commentary regarding his affiliation with the United States Coast Guard. Further, Terrell alleges that the police officers made threats against his career in the United States Coast Guard. Terrell claims that the police officers made him stand outside in cold weather, approximately twenty-eight degrees Fahrenheit, without shoes or a jacket. In addition to complaints about his treatment leading up to and during his arrest, Terrell raises various allegations contending that the use of the DIMS program by defendants violated his constitutional rights.

On September 21, 2004, this Court granted Defendant Police Officers' and Defendant Police Chief Carlos Leon's Motions for Summary Judgment. The Court also granted in part the City of El Paso's Motion for Judgment on the Pleadings. Terrell appealed the Court's Order granting summary judgment, the Court's denial of Terrell's motion for declaratory judgment, and the judge's refusal to recuse herself. On April 12, 2006, the Court of Appeals filed its judgment dismissing the appeals for lack of jurisdiction over the interlocutory appeals.

## II. DISCUSSION

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of

material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Motions for Reconsideration

■ The Court considered Plaintiff's "Motion for Reconsideration of Summary Judgment Concerning Police." As Plaintiff has raised no issues not previously considered by this Court, the prior order granting summary judgment is adhered to. Plaintiff's Motion is denied.

The Court also considered Plaintiff's "Motion to Reconsider Concerning Defendant Leon." As Plaintiff has raised no issues not previously considered by this Court, the prior order granting summary judgment is adhered to. Plaintiff's Motion is denied.

## C. District Attorney Esparza's and the County's Motions for Summary Judgment

The arguments of Terrell's attorney, in both his Second Amended Complaint and Response, are incoherent, disorganized, and nearly indiscernible. The County's Motion is nearly as disorganized and provides only a flimsy discussion of applicable law, failing to address even the basic elements of the various sorts of § 1983 claims that Terrell appears to allege. It is into this murky realm that the Court must enter to sort out questions regarding the constitutionality of the DIMS program. Given the state of the pleadings, the Court has limited its opinion only to the arguments that it has been able to discern from the filings and rules only on the County's and Esparza's Motion for Summary Judgment under the specific facts of this case.

In his Motion, Esparza argues that he is shielded by both qualified immunity and absolute prosecutorial immunity from Terrell's claims that the DIMS process violates Texas law and Terrell's constitutional rights. Esparza and the County state that Terrell has failed to assert in his Second Amended Complaint any constitutional violations resulting from his processing under DIMS. With regard to Terrell's intentional tort claims, Esparza and the County argue that such claims are barred under the Texas Tort Claims Act. Finally, the County argues that it is shielded by sovereign immunity.

Terrell essentially responds that the DIMS process violated his Fourth Amendment right to a probable cause determination by a neutral magistrate and his Eighth Amendment right to be free from excessive bail. He argues that Esparza is not entitled to absolute prosecutorial immunity with regard to the DIMS claims because "Esparza was carrying out a *local* policy (DIMS) that he created and implemented in excess of his jurisdiction." Resp. to County's Mot. 19 (emphasis in original). He claims that DIMS is "a conspiracy by all of the defendants, including Jaime Esparza and the County of El Paso, to deprive arrestees like Plaintiff to deprive [sic] him of his federally protected constitutional rights [sic] of a neutral and detached magistrate." *Id.* at 20. He also argues that he should prevail on his § 1983 claims because the DIMS program violates a wide array of Texas laws. Finally, he argues that the County is not entitled to sovereign immunity because the Supreme Court does not afford Eleventh Amendment sovereign immunity to state political subdivisions. *Id.* at 22.

### 1. District Attorney Esparza's qualified immunity

Esparza argues that he is shielded by qualified immunity from Terrell's § 1983

because Terrell failed to assert any constitutional violations. Terrell responds by arguing that his rights under the Fourth Amendment were violated because he was never presented to a magistrate for a determination of probable cause prior to his release on bail, and because he was arrested without a warrant. He also argues that the DIMS program violated his Eighth Amendment right to be free from excessive bail and that DIMS violates Texas criminal procedure law.

The doctrine of qualified immunity serves to shield government officials from liability based on the performance of discretionary functions. *Beltran v. City of El Paso,* 367 F.3d 299, 302–03 (5th Cir. 2004); *Thompson v. Upshur County,* 245 F.3d 447, 456 (5th Cir.2001). To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority. *Cronen v. Tex. Dep't of Human Servs.,* 977 F.2d 934, 939 (5th Cir.1992). Once a defendant has properly invoked qualified immunity, the burden rests on the plaintiff to show that the defense does not apply. *Beltran,* 367 F.3d at 303; *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir.2002) (en banc).

In order to show that the defense does not apply, the plaintiff must meet a two-pronged test. First, the plaintiff must show that the allegations, if true, establish a constitutional violation. *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *McClendon,* 305 F.3d at 322–23. If a plaintiff succeeds in making this showing, he must then show that the constitutional right was "clearly established" at the time of the violation. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If the official conduct violates a clearly estab-

lished right, the official is still entitled to qualified immunity if his conduct was objectively reasonable in light of the established legal rules at the time of the alleged violation. *Wallace v. County of Comal,* 400 F.3d 284, 289 (5th Cir.2005); *Rhodes v. Prince,* 2007 WL 431049, at *2 (N.D.Tex. Feb. 8, 2007). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Rhodes,* 2007 WL 431049, at *2 (quoting *Cozzo v. Tangipahoa Parish Council–President Gov't,* 279 F.3d 273, 284 (5th Cir.2002) (internal citations omitted)).

It is undisputed that Esparza was acting in his official capacity at the time of the arrest and that his actions were within the scope of his discretionary authority. Thus, Terrell must come forward with evidence that the defense does not apply. Terrell fails to do so. He has failed to allege a violation of a clearly established constitutional right and he has failed to argue how Esparza's conduct was objectively unreasonable.

The undisputed facts indicate that had Terrell not paid the bond set and/or recommended by the assistant district attorney, he could have waited in jail until a magistrate arrived the next morning and made an appearance before that magistrate. Instead, Terrell chose to pay the bond, most likely to expedite his release, and was in fact released. In other words, and assuming appearance before a magistrate prior to payment or setting of a bond is required, *see, e.g., Gilbert v. State,* 162 Tex.Crim. 290, 284 S.W.2d 906 (App.1955) (discussing timeliness of mandatory appearance before magistrate); *Hicks v. Matthews,* 153 Tex. 177, 266 S.W.2d 846

(1954) (same), Terrell had the option to do so and chose otherwise.

■ In addition, Terrell has not shown that the Fourth Amendment demands that he receive a magistrate's probable cause determination under the facts of this case. Under the Fourth Amendment, an arrestee must be promptly presented to a neutral magistrate for a determination of probable cause as a prerequisite to an extended restraint on his liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein*, the Court stated that a probable cause determination "is required only for suspects who suffer restraints on liberty other than the condition that they appear for trial." *Id.* at 125 n. 26, 95 S.Ct. 854. The Court did not limit "extended restraint on liberty" to physical detention. *Id.* at 114, 95 S.Ct. 854. Instead, the Court noted that certain terms of pre-trial release could effect a "significant restraint on liberty." *Id.* The Court specifically cited 18 U.S.C. § 3146 as an example of such terms, though the Court provided no further elaboration. *Id.*

In *Evans v. Ball*, a *Bivens* case challenging an alleged seizure under the Fourth Amendment, the Fifth Circuit reviewed the terms of 18 U.S.C. § 3146 and found that a restraint on liberty implicating the Fourth Amendment includes not only physical detention but also the freedom to travel while on pre-trial release. *Evans v. Ball*, 168 F.3d 856, 861 & n. 5 (5th Cir.1999). Thus, the Fifth Circuit held that the plaintiff was seized under the Fourth Amendment based upon a summons coupled with liberty restrictions including the requirements that the plaintiff seek permission before traveling outside of the state, that he sign a personal recognizance bond, and that he report regularly to pretrial services. *Id.* at 861.

Regarding the timing of the probable cause determination, the Supreme Court in *Gerstein* made it clear that the Constitution does not impose a rigid procedural framework for making the necessary determination; instead, it allows each jurisdiction to comply with this procedural requirement in different ways. *Gerstein*, 420 U.S. at 123, 95 S.Ct. 854. In *County of Riverside v. McLaughlin*, the Court elaborated on the *Gerstein* requirement explaining that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). However, the Court noted that determinations that take place within the 48 hour time frame might still violate the Fourth Amendment if the arrestee can show that the probable cause determination was unreasonably delayed. *Id.*

In this case, it is undisputed that Terrell paid bail and was released within ten hours of his initial encounter with the police and within four hours of his booking, well within the 48 hour requirement of *County of Riverside*. Terrell has not shown the existence of any facts or made any arguments regarding significant or continuing restraints upon his liberty after his release. Nor has he made arguments or shown facts that his probable cause determination was unreasonably delayed during those hours before he was released. Thus, under the facts of the case, he was not constitutionally entitled to a probable cause determination before a neutral magistrate and he has failed to demonstrate the existence of any Fourth Amendment violation. Accordingly, his § 1983 claim for a violation of his rights under the Fourth Amendment fails.

■ Next Terrell appears to argue that because the assistant district attorney set the bail, the bail was per se excessive

and violated his rights under the Eighth Amendment. The Eighth Amendment provides that "[e]xcessive bail shall not be required." U.S. CONST. amend. VIII. The Supreme Court has stated that "[b]ail set at a figure higher than an amount reasonably calculated [to ensure the defendant's presence at trial] is 'excessive' under the Eighth Amendment." *U.S. v. Salerno*, 481 U.S. 739, 752, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (quoting *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951)).[1]

Terrell does not argue that the actual amount of his bail, $1,000, is excessive. Instead, he argues that his bail was excessive because it was set by a district attorney pursuant to a bond schedule. However, Terrell does not link how the procedure under which his bail was set necessarily results in an excessive amount of bail. He merely concludes that it must be excessive because the bail was not set by a magistrate. Also, it is undisputed that Terrell could have waited until the next morning to appear before a magistrate and receive a bail determination. Terrell has failed to explain how his election to pay bail pursuant to the schedule and receive an expedited release violates his right to be free from excessive bail under the Eighth Amendment.

■ Terrell's claim regarding the manner in which his bail was set might be better framed as a due process violation but still it would fail under the facts of this case. The Court has conducted an exhaustive research regarding the constitutionality of bond schedules in § 1983 cases. It has found only one case where a federal court found the use of a bond schedule to be unconstitutional.

In *Ackies v. Purdy*, the plaintiffs brought a class action lawsuit challenging Dade County's use of a master bond schedule in setting bond. *Ackies v. Purdy*, 322 F.Supp. 38, 40 (D.C.Fla.1970). Under the Dade County system, the booking officer at the Dade County jail consulted a bond schedule to determine the amount of bond based upon the charges. *Id.* If the defendant could not pay the bond, then he would remain in jail for periods ranging from three days to three weeks or longer before being presented to a judge. *Id.* Under these circumstances, the court in *Ackies* found that the use of the schedules violated both procedural due process and the equal protection clause of the Fourteenth Amendment. *Id.* at 41–42.

The court in *Ackies* based its decision upon the then recent case of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), reasoning that if procedural due process required hearings in an array of administrative proceedings then due process would certainly require the opportunity to be heard by a magistrate when one's liberty was at stake. *Id.* at 41. It also based its decision that the bond setting procedure violated the equal protection clause. *Id.* The Court explained that the bond schedule system created two groups of defendants, those who could afford to pay the bond and gain instant release and those who could not and remained detained for extended periods. *Id.* The Court held that the right to pre-trial release under reasonable conditions is a fundamental right and, therefore, its "constitutionality must be judged by the strictest standards of whether it promotes a compelling state interest." *Id.* at

---

1. The Supreme Court has never directly held that the excessive bail clause of the Eighth Amendment applies to the States. *Broussard v. Parish of Orleans*, 318 F.3d 644, 650–51 (5th Cir.2003). Rather, the Supreme Court has assumed that the prohibition on excessive bail applies to the States through the Fourteenth Amendment. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Broussard*, 318 F.3d at 650 n. 25. This Court will do the same.

41–42. The Court did not find a compelling state interest under the facts of the case and ruled in favor of the plaintiffs. *Id.* at 42.

This Court will not follow the *Ackies* holding. First, despite the broad use of bond schedules across the country, the Court has not been able to find any opinions since *Ackies* finding the use of bond schedules unconstitutional. In addition, the *Ackies* holding was decided more than thirty-five years ago and has not been further developed by any court. In addition, *Ackies* was handed down before the Supreme Court's holding in *Gerstein* at a very different time in the history of constitutional criminal procedure. Clearly, there are greater procedural safeguards in place since the time of the *Ackies* holding to protect against extended detention without judicial review, the court's chief concern in *Ackies*. Thus, the concerns that the *Ackies* court voiced regarding the procedures in place in Florida in 1970 have subsequently been addressed. For these reasons, the *Ackies* holding is anomalous and outdated.

More recently, the Seventh Circuit criticized the *Ackies* opinion as going too far in its determination that setting bail from a master bail bond schedule without a prior hearing is a denial of due process. *Woods v. City of Michigan*, 940 F.2d 275, 285 (7th Cir.1991). That court held that due process could require individualized bail determinations in certain situations, such as particularized challenges to the amount of bail, but that "[c]onstitutionality would depend on whether the bail amount listed on the schedule is excessive for a particular defendant accused of having committed a particular crime." *Id.*

This Court subscribes to the Seventh Circuit's reasoning in *Woods* and finds no due process violation under the facts of this case. The Court holds that the amount of Terrell's bail was not excessive

under the circumstances and, therefore, his constitutional right to due process was not violated. If Terrell had no process to challenge the amount of his bail then he might well raise a constitutional question. However, it is undisputed in this case that had Terrell waited, he could have received an individualized bail determination from a magistrate, and that Texas criminal procedure law provides for bail reduction hearings as well. Thus, there was no constitutional violation regarding the manner in which Terrell's bail was set.

Based upon the above, Terrell has not demonstrated the existence of a constitutional violation; therefore Esparza is accordingly shielded by qualified immunity from Terrell's § 1983 claims.

### 2. Esparza's absolute immunity

The Court need not reach Esparza's argument that he is protected by absolute immunity as it has resolved the issues on the basis of qualified immunity.

### 3. Terrell's *Monell* claim against the County

Though neither the County nor Terrell directly address it, a governmental entity such as El Paso County can only be held liable in an action under § 1983 if there is either an unconstitutional action by official policymakers or a policy or custom that caused the deprivation of a constitutional right. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Johnson v. Deep East Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir.2004). Municipal liability on a claim brought under § 1983 requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694, 98

S.Ct. 2018; *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001).

As discussed above, Terrell has failed to allege a deprivation of a constitutional right, either by an official policymaker or due to a County policy or custom. Accordingly, his § 1983 claim against the County fails.

### 4. Violations of state law as basis for § 1983 claim

■ Next, Terrell's claims in his Second Amended Complaint that the DIMS program violates a variety of Texas laws. It is well settled that violations of state law cannot form the basis of a § 1983 claim. *Giovanni v. Lynn,* 48 F.3d 908, 912–13 (5th Cir.1995) ("[W]here a liberty or property interest is infringed, the process which is due under the United States Constitution is that measured by the due process clause, not that called for by state regulations. Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process.") (internal citation omitted); *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir.1983) ("It is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right."). Although the DIMS program may well violate state law, Terrell's state law claims are irrelevant to his § 1983 claim.

### 5. Conspiracy claims

As for Terrell's claims of a conspiracy among all of the parties to deprive him of his constitutional rights, since the Court has been unable to discern the presence of any constitutional violations in the pleadings, there can be no conspiracy. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir.1990) (finding that a conspiracy claim is not actionable without an actionable violation of § 1983). Terrell has failed to present any evidence that supports the conspiracy claim. Accordingly, Terrell's conspiracy claim fails.

### 6. Terrell's claims under Texas tort law

■ The County argues that it is immune from Terrell's claims that it committed the torts of malicious prosecution, false arrest and imprisonment, assault, battery, and conspiracy under Texas law. The Court has reviewed the Second Amended Complaint and has been unable to discern such claims against the County. Nevertheless, to the extent that Terrell has expressed any such intentional state tort law claims, such claims fail.

Under Texas law, two statutory provisions are relevant to a determination of whether Texas has waived its sovereign immunity to suit in Texas courts. The first statute waives sovereign immunity, while the second stands as an exception to that waiver. Section 101.021(2) of the Texas Civil Practice Management and Remedies Code provides that "a governmental unit [2] in the state is liable for ... (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. MGMT. & REM.CODE ANN. § 101.021. Section 101.057 of the same

---

2. A "governmental unit" is defined, *inter alia,* as "this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts," "an emergency service organization," or " 'any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.' " TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3).

Code, the exception to the waiver, provides that "[t]his chapter does not apply to a claim ... arising out of assault, battery, false imprisonment, or any other intentional tort." *Id.* § 101.057.

Thus, under section 101.057, the County is immune from suit for these intentional torts.

## D. City's Motion for Summary Judgment

The City has raised a number of objections to Terrell's summary judgment evidence. The Court will address these challenges first, followed by a discussion of the City's Motion for Summary Judgment.

### 1. City of El Paso's objections to Terrell's summary judgment evidence

The City has raised eight objections to Terrell's summary judgment evidence including challenges to Exhibits 2, 3, 4, 11, 16, 18, 20, 27, and 43 on a variety of grounds. These objections are **OVERRULED** as moot because the Court did not rely on the challenged evidence in deciding the Motion. *See RLI Ins. Co. v. Phila. Indem. Ins. Co.*, 421 F.Supp.2d 956, 959 n. 3 (N.D.Tex.2006); *Nat'l Propane Gas Ass'n v. U.S. Dept. of Transp.*, 43 F.Supp.2d 665, 673 n. 7 (N.D.Tex.1999).

Though the Court did not rely on the affidavit of expert George DeAngelis in Exhibit 27 in deciding the Motion, the Court does refer to it in its Opinion below. Therefore, the Court will consider the City's objections.

With regard to this Exhibit, the City argues that the Exhibit "is not sworn and fails to meet the elements of an affidavit[,]" does not establish the witness's qualifications as an expert as required under FED.R.EVID. 702, and is based on hearsay. City's Objections to Pl.'s Summ. J. Evid. 3.

 It is settled in the Fifth Circuit that unsworn affidavits are incompetent to raise a fact issue precluding summary judgment. *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988). In order to qualify as an expert, a witness must possess such knowledge or experience to make it appear that his opinion will likely assist the trier of fact in deciding the case. *U.S. v. Hicks*, 389 F.3d 514, 524 (2004) (citing *U.S. v. Bourgeois*, 950 F.2d 980, 987 (5th Cir.1992)). Under the federal rules experts may rely upon hearsay evidence in forming their opinions. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir.1996). The evidence upon which the expert bases his opinion need not be admissible so long as it is of a type reasonably relied upon by experts in the particular field. FED.R.EVID. 703; *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 n. 6 (5th Cir.1994).

The DeAngelis' affidavit included with Terrell's pleadings is signed and sworn; thus, the Court overrules this part of the City's objection. It is not clear to the Court what the City means when it claims that the document does not meet the elements of an affidavit. Thus, the Court rejects this objection as well. As to the claim that this expert testimony is inadmissible because it is based upon hearsay, this is not a grounds for objecting to expert testimony because evidence otherwise inadmissible at trial can be used to form the basis for an expert opinion. Thus, the Court overrules the City's objection to the DeAngelis expert report on the general grounds that it contains hearsay.

 Terrell, however, has failed to establish DeAngelis' qualification as an expert. DeAngelis has not provided any information in his affidavit explaining his experience, training, or other qualification. Terrell has failed to lay an appropriate foundation to demonstrate to the Court that DeAngelis' opinion would assist the trier of fact in deciding the case. Accord-

ingly, the Court **SUSTAINS** the City's objection on these grounds. The report is not admissible for purposes of summary judgment.

## 2. The City's Motion for Summary Judgment

In its Motion, the City argues that it is entitled to summary judgment on Terrell's § 1983 DIMS claims because this Court has already determined in the Police Officers' Motion for Summary Judgment that the City's police officers were shielded by qualified immunity. The City also argues that there is no evidence of municipal liability as Terrell has failed to establish facts to support the elements of his *Monell* claim and his inadequate training claim. Finally, the City argues that the Court should not grant Terrell's prayer for declaratory judgment and injunctive relief as there is no immediate danger of direct injury.

Terrell responds that he had a First Amendment right to question the police officers without risking arrest, that he never had the opportunity to appear before a magistrate and that the officers created exigent circumstances and falsified records to justify their actions. He claims that DIMS violated his clearly established rights, that he was subject to an illegal search and seizure, a false arrest, and that, under DIMS, he was deprived of his constitutional right to appear before a magistrate. He says that with regards to DIMS "the city had no jurisdiction to contract and implement policies which exceeded its jurisdiction." Resp. to City's Mot. 13.

### a. *Monell* claims against the City

■ Under 42 U.S.C. § 1983, a municipality such as the City of El Paso can be held liable if there is a policy or custom that caused the deprivation of a constitutional right. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Johnson*, 379 F.3d at 309. A *Monell* claim requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Piotrowski*, 237 F.3d at 578. Municipal policy is normally found in "duly promulgated policy statements, ordinances or regulations" while a custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579. The court will review each of Terrell's constitutional claims against the City in light of the law.

The constitutional rights that Terrell claims were violated are "illegal search and seizure, falsification of records, false arrest, creation of exigent circumstances, [and] by-passing the magistrate for a determination of probable cause and to set bond." Resp. to City's Mot. 7. In its Order of September 21, 2004, this Court determined that Terrell's arrest passed constitutional muster. Sept. 21, 2004, Order 6–8. Terrell cannot impute liability to the City for the officer's actions during his arrest when there was no constitutional violation. Accordingly, his claims against the City that he was subject to a false arrest, an illegal search and seizure, and a violation of his First Amendment right to question the officers without retaliation, fail.

■ With regard to the claims of falsification of records and creation of exigent circumstances, even were these claims to be true, Terrell has presented no summary judgment evidence demonstrating the existence of the City's custom or policy promoting or permitting these activities. Accordingly, these claims against the City fail as well.

Terrell's final basis for his *Monell* claim pertains to his being processed under the DIMS system after his arrest. Terrell claims that the DIMS system violated his rights under state law and his rights under the Fourth and Fourteenth Amendments to appear before a magistrate for a probable cause determination and bail setting. Resp. to City's Mot. 7. He claims that his warrantless arrest was a violation of his constitutional rights.

First, as discussed above with regard to the County's Motion, a violation of state law is not a valid basis for a § 1983 action. Thus, Terrell's claims based upon violations of state law fail.

Next, it is well-settled that the police may make warrantless arrest upon probable cause. *U.S. v. Watson,* 423 U.S. 411, 418–22, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The Court has already found that the Officers had probable cause to arrest Terrell; therefore, the fact that Terrell was arrested without a warrant is not a constitutional violation. Nor was there a violation of Terrell's rights for never appearing before a magistrate.

As stated above, under the Fourth Amendment, an arrestee must be promptly presented to a neutral magistrate for a determination of probable cause as a prerequisite to an extended restraint on his liberty following arrest. *Gerstein,* 420 U.S. at 114, 95 S.Ct. 854. The Court stated that a probable cause determination "is required only for suspects who suffer restraints on liberty other than the condition that they appear for trial." *Id.* at 125 n. 26, 95 S.Ct. 854. However, the Court did not limit "extended restraint on liberty" to physical detention; instead, the Court noted that certain terms of pre-trial release could effect a "significant restraint on liberty." *Id.* at 114, 95 S.Ct. 854. The Court specifically cited 18 U.S.C. § 3146 as an example of such terms, though the Court provided no further elaboration. *Id.*

In *Evans v. Ball,* the Fifth Circuit reviewed the terms of 18 U.S.C. § 3146 and found that the restraint on liberty implicating the Fourth Amendment includes not only physical detention but also the freedom to travel while on pre-trial release. *Evans,* 168 F.3d at 861, 861 n. 5. Thus, the Fifth Circuit held that the plaintiff was seized under the Fourth Amendment based upon a summons coupled with liberty restrictions including requirements that the plaintiff seek permission before traveling outside of the state, that he sign a personal recognizance bond, and that he report regularly to pretrial services. *Id.* at 861.

Regarding the timing of the probable cause determination, the Supreme Court in *Gerstein* made it clear that the Constitution does not impose a rigid procedural framework upon a jurisdiction for making the necessary determination; instead, it allows each jurisdiction to comply with this procedural requirement in different ways. *Id.* at 123, 95 S.Ct. 854. In *County of Riverside v. McLaughlin,* the Court elaborated on the *Gerstein* requirement explaining that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein." County of Riverside,* 500 U.S. at 56, 111 S.Ct. 1661. The Court noted that "determinations that take place within the 48 hour time frame might still violate the Fourth Amendment if the arrestee can show that the probable cause determination was unreasonably delayed." *Id.*

In this case, it is undisputed that Terrell paid bail and was released approximately four hours after his booking and ten hours after his initial encounter with the police, well within the 48 hour requirement of *County of Riverside.* Terrell has not shown the existence of any facts or made

any arguments regarding significant or continuing restraints upon his liberty after his release. Thus, he was not constitutionally entitled to a probable cause determination before a neutral magistrate and he has failed to demonstrate the existence of any Fourth Amendment violation. In addition, it is undisputed that had Terrell not paid the recommended bail, he could have waited in jail until a magistrate arrived in the morning for a probable cause determination and bail setting. Instead, Terrell chose to pay the bond and was released from custody. Accordingly, his § 1983 claim fails.

### b. Inadequate training claims against the City

In his Second Amended Complaint, Terrell claims that the City "improperly trained [the police officers] to follow the DIMS program which was an execution and implementation [sic] the DIMS contract, policy statement, regulation, or decision officially adopted and promulgated by municipal officers or results from a custom fairly attributable to the City of El Paso." Second Am. Compl. ¶ 284. The City argues that Terrell has failed to produce any evidence, other than bare allegations, to support the elements of his inadequate training claim. Terrell does not directly respond to this contention other than "[t]he EPPD had a history of police abuse and were improperly trained." Resp. to City's Mot. 8. Terrell cites the report of his expert DeAngelis to provide factual support for his claim. *Id.*

■ To prevail on a failure to train claim, plaintiff must demonstrate that: (1) the training procedures of the municipality were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *Baker,* 75 F.3d at 200 (citing *Harris,* 489 U.S. at 385–87, 109

S.Ct. 1197). Plaintiff must show more than that "an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct [because] ... [s]uch a claim could be made about almost any encounter resulting in injury...." *Harris,* 489 U.S. at 391, 109 S.Ct. 1197. Generally, a plaintiff cannot sustain a failure to train or inadequate training claim under § 1983 if the municipality in question complies with state-mandated training standards for its officers. *See Benavides v. County of Wilson,* 955 F.2d 968, 972–73 (5th Cir.1992).

■ The Court has already ruled that the DeAngelis affidavit is inadmissible as Terrell has failed to lay a proper foundation regarding DeAngelis' qualifications as an expert. Terrell has provided no other evidence to satisfy the elements of a failure to train or inadequate training claim. Therefore, this claim fails. Even if the Court were to have found the DeAngelis affidavit to be admissible, Terrell's claims would still fail because that affidavit contains nothing more than conclusory statements regarding the competency of the El Paso Police Department and the sufficiency of its training.

Finally, contrary to Terrell's urging, the Court is not required to rule on the facial constitutionality of the DIMS program in deciding the case. Rather, the Court has reviewed the facts and arguments presented by the parties in this case and has determined that Terrell has failed to sustain his burden to survive summary judgment. Though there may be inequities in DIMS, these issues are not before this Court in this § 1983 action.

### III. CONCLUSION

Accordingly, Terrell's Motions for Reconsideration (Doc. Nos. 160 and 164) are **DENIED,** the County's Motion for Sum-

mary Judgment (Doc. No. 208) is **GRANT-ED,** the City's Motion for Summary Judgment (Doc. No. 180) is **GRANTED,** and Defendant Police Officers' "Motion for Entry of Final Judgment under Fed.R.Civ.P. 54(b)" (Doc. No. 169) is **GRANTED.**

The Clerk shall close the case.

**SO ORDERED.**