*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0403p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

GARY FIELDS, Individually and on behalf of
all others similarly situated,
                    *Plaintiff-Appellant*,

          *v.*

HENRY COUNTY, TENNESSEE,
                    *Defendant-Appellee.*

No. 11-6352

_____

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:09-cv-1267—J. Daniel Breen, District Judge.

Argued: October 5, 2012

Decided and Filed:  December 10, 2012

Before:  COLE and KETHLEDGE, Circuit Judges; THAPAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jerry A. Gonzalez, JERRY GONZALEZ PLC, Murfreesboro, Tennessee, for Appellant.  Jon A. York, PENTECOST & GLENN, PLLC, Jackson, Tennessee, for Appellee.  **ON BRIEF:** Jerry A. Gonzalez, JERRY GONZALEZ PLC, Murfreesboro, Tennessee, Irwin Venick, DOBBINS, VENICK, KUHN & BYASSEE, PLLC, Nashville, Tennessee, for Appellant.  Jon A. York, Brandon O. Gibson, PENTECOST & GLENN, PLLC, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

AMUL R. THAPAR, District Judge.  The question presented in this case is whether Henry County's policies of automatically detaining domestic-assault defendants

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

for 12 hours and using a bond schedule to determine their bail violate the United States Constitution.  The district court held they do not.  We agree and affirm.

**I.**

On December 11, 2008, Gary Fields's wife contacted the Sheriff's office in Henry County, Tennessee.  She alleged that Fields hit and choked her.  When police arrived to investigate, they found Mrs. Fields with a bloody lip, abrasions, and bruises.  The next day, Officer Michelle Brewer obtained a warrant for Fields's arrest for misdemeanor domestic assault.  When Officer Brewer prepared the warrant, she wrote "W/O" on the affidavit, indicating Fields's arrest would be without bond.

Three days later, Fields learned about the warrant and turned himself in to the Henry County Sherriff's Office.  He was taken to the jail and booked.  During booking, Fields requested that he be allowed to post bail.  After being told that he could not do so until the next day, Fields demanded to speak to a judge or magistrate.

The officers in the booking room took Fields to see the Sheriff instead.  Fields told the Sheriff that he had researched the issue and was allowed to post bail instead of being jailed.  Fields was incorrect:  There is no right under Tennessee law to immediate release or to post bail immediately after arrest.[1]

The Sheriff responded that Fields had to be detained for 12 hours because he was charged with domestic assault.  He was also mistaken.  Under Tennessee law, domestic-violence defendants must be held for a 12-hour period, but only if the official authorized to release the arrestee "finds that the offender is a threat to the alleged victim."  T.C.A. § 40-11-150(h)(1).  And the official may still release the offender earlier if he "determines that sufficient time has or will have elapsed for the victim to be protected."  *Id.*  Neither finding was made for Fields.  His experience was not unique:  Henry County

---

[1]While Tennessee grants criminal defendants a general "right to bail pending trial," *Wallace v. State*, 245 S.W.2d 192, 194 (Tenn. 1952) (citing Tenn. Const. art. I, § 15), it does not grant defendants a specific right to post bail within a particular time frame, *see* T.C.A. § 40-11-105 (providing that, under certain circumstances, the clerk of the circuit court "*may* [] admit the defendant to bail . . . *after the defendant has been committed to the county or city jail*, following arrest" (emphasis added)).

admits that it had a policy of placing a 12-hour hold on all persons arrested for domestic violence regardless of the individual circumstances.[2]

The next morning, Fields appeared before a Henry County judge. The judge set bail at $5,000, imposed several conditions on Fields's release, and ordered him to attend 28 weeks of domestic-abuse counseling. Ten months later, prosecutors dropped the domestic-assault charge.

Fields then filed this § 1983 suit in federal court claiming that Henry County had violated his Eighth Amendment right to be free from excessive bail and his Fourteenth Amendment right to procedural due process. The district court granted Henry County's motion for summary judgment. This appeal followed.

## II.

We review the district court's summary-judgment decision de novo. *Union Planters Bank, N.A. v. Cont'l Cas. Co.*, 478 F.3d 759, 763 (6th Cir. 2007).

## A.        Section 1983 and Local Government Liability

To establish that a local government is liable under § 1983, a plaintiff must show that (1) the local government had an official policy, custom, or practice that (2) deprived the plaintiff of his federal rights. *See Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 777 (6th Cir. 2012). Henry County does not dispute that Fields's detention resulted from a policy of automatically detaining domestic-assault defendants for a 12-hour period. Nor does it dispute that its policy was to set bail using a bond schedule.[3] Thus, the only issue before us is whether those policies violated the plaintiff's Eighth and Fourteenth Amendment rights.

---

[2]Henry County's policy violates T.C.A. § 40-11-150. *See Hopkins v. Bradley Cnty.*, 338 S.W.3d 529, 537 (Tenn. Ct. App. 2010).

[3]Bail or bond schedules are procedural schemes that provide officials with a standardized bail amount based on the charge the defendant faces. *See generally* Lindsey Carlson, *Bail Schedules: A Violation of Judicial Discretion?*, *Criminal Justice,* Spring 2011, at 12, 12.

**B.     Excessive Bail**

Fields advances two theories under the Eighth Amendment:  (1) Henry County's use of a bond schedule to set his bail violated his right to be free from excessive bail, and (2) Henry County's denial of bond for 12 hours violated his right to bail.  He is wrong on both counts.

The Eighth Amendment provides that "[e]xcessive bail shall not be required."[4] Importantly, the Eighth Amendment does not mandate bail in all cases.  *United States v. Salerno*, 481 U.S. 739, 753-54 (1987) (citing *Carlson v. Landon,* 342 U.S. 524, 545–46 (1952)).  Rather, the Eighth Amendment mandates that when bail is granted, it may not be unreasonably high in light of the government's purpose for imposing bail. *See id.* at 754.  In applying the Eighth Amendment's Excessive Fines Clause, the Supreme Court has held that the term "excessive" means "grossly disproportional to the gravity of a defendant's offense."  *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (interpreting the Excessive Fines Clause).

*The Bond Schedule.*  Fields argues that Henry County's use of a bond schedule violates his Eighth Amendment right to be free from excessive bail.  But there is nothing inherently wrong with bond schedules.  *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc) ("Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting[] its requirements."); *cf. Stack v. Boyle*, 342 U.S. 1, 6 (1951) ("If bail in an amount greater than that *usually fixed for serious charges of crimes* is required in the case of any of the petitioners, that is a matter to which evidence should be directed in a hearing so that the constitutional rights of each petitioner may be preserved." (emphasis added)).  Indeed, bond schedules are aimed at making sure that defendants who are accused of similar crimes receive similar bonds.  *See*, *e.g.*, *Stack*, 342 U.S. at 5 (noting that a relevant factor in applying the Clause is whether the defendant received as bond a sum "much higher than that usually

---

[4]The Eighth Amendment's prohibition of excessive bail has not been squarely held to apply to the states through the Fourteenth Amendment.  Like the Supreme Court, we assume without deciding that the Clause is incorporated against the states. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971).

imposed for offenses with like penalties"). The bond schedule represents an assessment of what bail amount would ensure the appearance of the average defendant facing such a charge. The schedules are therefore aimed at assuring the presence of a defendant. *See id.* ("[T]he fixing of bail for any individual defendant must be based upon *standards relevant* to the purpose of assuring the presence of that defendant." (emphasis added)). Thus, the mere use of a schedule does not itself pose a constitutional problem under the Eighth Amendment. *See, e.g.*, *Glenn v. City of Columbus*, 75 F. App'x 983 (5th Cir. 2003) (citing *Pugh*, 572 F.2d at 1057); *see also Terrell v. City of El Paso*, 481 F. Supp. 2d 757, 766 (W.D. Tex. 2007) (reporting that "exhaustive research" of challenges to bond schedules under § 1983 yielded no cases where a bond schedule was found unconstitutional under the Excessive Bail Clause).

That is not to say that using a bond schedule can never violate the Excessive Bail Clause. If, for example, the bond schedule set bail for domestic assault at an amount "grossly disproportional to the gravity of" that offense, then using the schedule could violate the Eighth Amendment. *See Bajakajian*, 524 U.S. at 334. But Fields does not make that argument.

In fact, Fields fails to point to any inherent problem with the dollar amount set in his case. He does not claim it was excessive either relative to the crime he was charged with or based on the particular facts of his case. *See, e.g.*, *Wagenmann v. Adams*, 829 F.2d 196, 213 (1st Cir. 1987) (finding $500 excessive when defendant had no criminal history and was accused of minor violations); *cf. United States v. Beaman*, 631 F.2d 85, 86–87 (6th Cir. 1980) (finding $400,000 bond excessive under the statutory counterpart to the Eighth Amendment based on the "facts available in this case"). He does not argue that the evidence produced at his hearing was too weak to justify the amount. *See, e.g.*, *United States v. Leisure*, 710 F.2d 422, 428 (8th Cir. 1983) (finding bail of $1 million and $2 million cash for defendants was excessive when "all of the evidence adduced before the magistrate indicated that appellants would appear at their trial"). And he does not claim that his bail was much higher than normal for such charges or that the judge relied upon impermissible factors. *See, e.g.*, *Stack*, 342 U.S.

at 5 ("It is not denied that bail for each petitioner has been fixed in a sum much higher than that usually imposed for offenses with like penalties and yet there has been no factual showing to justify such action in this case."); *Wagenmann*, 829 F.2d at 213 (holding that attempting "to guarantee continued confinement" was an impermissible purpose).

Instead, Fields faults Henry County for setting his bail at the same amount as other defendants facing domestic-assault charges. He argues that he was entitled to a "particularized examination" before having his bond set. Appellant's Br. at 13, 55. But nothing in the Eighth Amendment requires a particular type of "process" or examination. *See Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("We will not assume that Galen's bail was excessive simply because the state failed to comply with a self-imposed procedural requirement . . . ."); *United States v. Giangrosso*, 763 F.2d 849, 851 (7th Cir. 1985) ("[The defendant] is not complaining about excessive bail, but about the procedures used to deny bail; that is a complaint under the due process clause . . . ."). Thus, his Eighth Amendment claim based on the bond schedule fails.

*The 12-Hour Hold.* Fields also claims that the 12-hour holding period was a "denial of bail." *See* Appellant's Br. at 56. Not so. The Eighth Amendment's protections address the amount of bail, not the timing. There is no constitutional right to speedy bail. *Cf. Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within 24 hours of arrest."); *Woods v. City of Michigan City*, 940 F.2d 275, 283 (7th Cir. 1991) (Will, D.J., concurring) ("Nothing in the eighth amendment, however, guarantees instant release for misdemeanors or any other offense."). Thus, Fields has not demonstrated an Eighth Amendment violation.

## C.     Procedural Due Process

Fields argues that Tennessee law creates a constitutionally protected liberty interest in the right to bail. *See* Appellant's Br. at 48. And he further asserts that Henry County's automatic-12-hour policy deprived him of that liberty interest without due process of law. *See id.* at 62–63. The elements of a procedural due process claim are:

(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Fields trips on the first hurdle because he cannot demonstrate that a constitutionally protected liberty interest was implicated here.  Liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  Fields contends that his liberty interest arises from state law. State law creates protected liberty interests only when (1) the state places "substantive limitations on official conduct" by using "explicitly mandatory language in connection with requiring specific substantive predicates," and (2) the state law requires a specific outcome if those "substantive predicates are met." *Gibson v. McMurray*, 159 F.3d 230, 233 (6th Cir. 1998) (internal quotation marks omitted).  Procedural rights that "do not require a particular substantive outcome" cannot give rise to protected liberty interests. *Id.*  Otherwise, federal courts could end up discouraging states from creating their own systems of procedural rights because states would fear opening themselves up to federal scrutiny.  *See Hewitt*, 459 U.S. at 471 (noting the irony of subjecting states who offer more protections to greater federal oversight); *see also Sandin v. Conner*, 515 U.S. 472, 482–84 (1995) (limiting the scope of liberty interests in the prison litigation context because prior cases had created "disincentives for States to codify prison management procedures").

Fields asserts a number of state-law bases for a constitutionally protected liberty interest.  His first two bases are: (1) his right to be examined by a judicial commissioner before being committed to jail and (2) his right to be examined in a bail hearing.  But these putative interests are not liberty interests at all.  These state-law rights promise only a particular type of hearing, not a specific outcome.  Since the hearing rights do not command a particular substantive outcome, they cannot create a protected liberty interest. *See Sweeton v. Brown,* 27 F.3d 1162, 1164-65 (6th Cir. 1994) (holding that the statutory right to a parole hearing does not create a liberty interest); *Procopio v.*

*Johnson*, 994 F.2d 325, 332 (7th Cir. 1993) (holding that the statutory right to an administrative hearing does not create a liberty interest); *see also Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir. 1982) ("If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. *Reductio ad absurdum.*").

Fields's next basis for his putative liberty interest is an alleged state-law bar on officials holding defendants for 12 hours unless they are found to be a danger to the alleged victim. An expectation of release may qualify as a constitutionally protected liberty interest. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) ("[T]he expectancy of release provided in this statute is entitled to some measure of constitutional protection."); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Fields asserts that he has such an expectation because Tennessee law provides that he cannot "be committed to prison" until he has a hearing before a magistrate. T.C.A. § 40-5-103. But § 40-5-103 addresses probable-cause hearings, not bail determinations. *See State v. Huddleston*, 924 S.W.2d 666, 677 (Tenn. 1996) (Reid, J., concurring) (quoting the predecessor of § 40-5-103, and explaining that the section, along with Criminal Rule 5(a), guarantees "a neutral determination of probable cause . . . taken promptly before a magistrate"); *id.* at 672 & n.2 (explaining that, while it is common practice to consolidate them, probable-cause determinations and bail hearings are distinct under Tennessee law). Moreover, the Tennessee Supreme Court has found that being temporarily detained in a jail, as Fields was, does not constitute being "committed to prison" under § 40-5-103. *See Wynn v. State*, 181 S.W.2d 332, 334 (Tenn. 1944) (holding that a "temporary holding or arrest for examination purposes" lasting 36 hours is "not a commital [sic] to prison within the spirit of" the predecessor to § 40-5-103 (internal quotation marks omitted)); *see also State v. Davis*, 141 S.W.3d 600, 626 (Tenn. 2004) (finding no "unnecessary delay" under Rule 5(a) where the defendant "was not taken before a magistrate for twelve to thirteen hours"). Indeed, the provisions of the Tennessee Code governing bail expressly allow an individual to be held in jail before bail is set. *See* T.C.A. § 40-11-105 (providing that, under certain circumstances, the

clerk of the circuit court "*may* [] admit the defendant to bail . . . *after the defendant has been committed to the county or city jail*, following arrest" (emphasis added)).  So § 40-5-103 does not create an expectation of release for someone in Fields's position and therefore cannot create a protected liberty interest in this case.

Fields also argues that he was incorrectly detained under § 40-11-150.  As discussed above, § 40-11-150 provides that a defendant who is a threat to his alleged victim must be detained for 12 hours.  Importantly, however, the law contains no affirmative guarantee that a person must be released absent a finding of dangerousness.  By its terms, § 40-11-150 requires only one thing:  Dangerous arrestees must be held for 12 hours.  It does not specify any consequences if officials do not make the necessary finding of dangerousness.  And a state law that does not require a specific outcome cannot create a liberty interest.  *See Gibson*, 159 F.3d at 233 (holding that a requirement that "a warrant shall not issue" until the prosecutor signs it did not require "any specific outcome" and thus did not create a liberty interest, despite its mandatory nature).

Fields next asserts a liberty interest based on his belief that Tennessee law presumes that defendants should be released on their own recognizance.  But Fields misreads Tennessee law.  In Tennessee, bail is the norm, not the exception.  To be released on his own recognizance, a defendant must demonstrate that bond is not necessary to assure his appearance.  T.C.A. § 40-11-117; *see Malmquist v. Metro. Gov't of Nashville*, No. 3:10-cv-1014, 2011 WL 5982670, at *10-11 (M.D. Tenn. Nov. 29, 2011) (describing plaintiff's interpretation of § 40-11-117 as "misleading"); *Graham v. Gen. Sessions Ct. of Franklin Cnty.*, 157 S.W.3d 790, 793 (Tenn. Ct. App. 2004).  And even after such a showing, a defendant is not guaranteed to be released on his own recognizance.  Section 40-11-115 clearly gives the magistrate discretion in deciding whether to order release on personal recognizance.  The provision states that a magistrate "may" order individuals charged with bailable offenses to be released on their personal recognizance.  T.C.A. § 40-11-115.  Since Tennessee law does not mandate release on personal recognizance, it lacks the "explicitly mandatory language" needed to create a liberty interest.  *Gibson*, 159 F.3d at 233 (quoting *Hewitt*, 459 U.S. at 468).

Finally, Fields asserts a liberty interest rooted in his right to post bail in the county where he was arrested, even if the warrant issued in another county.  But Fields's arrest, detention, and bail hearing all took place in Henry County.  Thus, assuming such a right exists, it was not implicated here.

Fields can claim a procedural due process violation in this case only if Tennessee law creates a liberty interest that warrants protection under the Due Process Clause. Tennessee's bail laws do not.  No provision of the Tennessee Code, individually or in concert with another section, granted him a right to be released earlier than he was. Consequently, Fields's procedural due process claim fails.

## III.

The judgment of the district court is AFFIRMED.